THE PEOPLE *ex rel.* WILLIAM J. SCOTT, Attorney General, Plaintiff-Appellee, *v.* HERMAN M. SILVERSTEIN *et al.*, Defendants-Appellees.— (WILLIAM CURRIE, Movant-Appellant.)

First District (1st Division)    No. 79-2148

Opinion filed November 3, 1980.

Reuben & Proctor, of Chicago (Don H. Reuben, Lawrence Gunnels, Samuel Fifer, and Charles J. Sennet, of counsel), for appellant.

Feiwell, Galper & Lasky, Ltd., of Chicago (George S. Feiwell, Daniel C. Meenan, and Bernard L. Rivkin, of counsel), for appellee George A. Otlewis.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

This appeal involves one aspect of the long-pending and slow-moving litigation brought by the People of the State of Illinois against the George F. Harding Museum (Museum), and its directors. Another phase of the case was before us in *People ex rel. Scott v. Silverstein* (1980), 86 Ill. App. 3d 605, 408 N.E.2d 243. The instant appeal is by William Currie, a newspaper reporter. George A. Otlewis, a director of the Museum, caused a deposition subpoena to be served upon Currie. The trial court denied Currie's motion to quash the subpoena predicated upon the Reporter's Privilege Act (Ill. Rev. Stat. 1979, ch. 51, par. 111 *et seq.*), and upon various constitutional matters. The trial court acted upon the theory that Currie had waived his statutory and constitutional privileges. However, the trial court limited the deposition questioning of Currie to matters which may have been divulged by Currie to plaintiff's attorney, Assistant Attorney General Donald G. Mulack, as reflected in Mulack's discovery deposition previously taken.

Currie had written a number of articles for the Chicago Tribune concerning the subject matter of the principal case. He also covered the ongoing court proceedings. In portions of Mulack's deposition testimony,

he stated he had conversations with Currie prior to and after suit was commenced against the Museum and its directors.

On October 21, 1976, Currie wrote an article disclosing that a Museum painting had been sold at auction in New York and that more artifacts were soon to be sold. Currie called Mulack "right after" the article was published. He asked Mulack if he had seen the story. He also "wanted to know if the sale of the assets in New York was legal, could the Museum do it." After this conversation and around the time suit was filed, Currie and Mulack had "regular contacts." Currie provided Mulack with information and also asked him questions. He did "a little of both." This information consisted of the names of some of the individuals Currie contacted in the course of researching his stories. Mulack called these individuals and spoke to them. In addition, Currie gave documents to Mulack including a copy of a voting trust agreement and a 1954 financial statement of the George F. Harding Estate.

Two reporters who had written a story called "State Probes Museums" in The New Art Examiner were also deposed. Both reporters acknowledged talking to Currie about his articles on the Museum while preparing their story. They stated Currie provided them with copies of his stories and referred them to the court file on the case. He did not provide them with his sources of information.

Defendant Otlewis first raises a challenge to our jurisdiction to hear this appeal. He argues the order requiring Currie to appear for a deposition is not a final order and therefore not appealable as of right. (Ill. Rev. Stat. 1979, ch. 110A, par. 301.) He suggests that only after Currie refuses to obey the instant order and a final order terminating contempt proceedings against him is entered would this court have jurisdiction under Supreme Court Rule 301.

We disagree. The order here involved is a final appealable order under Supreme Court Rule 301. In *Laurent v. Brelji* (1979), 74 Ill. App. 3d 214, 392 N.E.2d 929, defendant appealed from an order of the trial court directing him to comply with an administrative subpoena and to produce records of a former patient and testify at a Civil Service Commission discharge proceeding brought against plaintiff. This court held (74 Ill. App. 3d 214, 215-16):

> "Generally, an order allowing discovery or directing disclosure of information is considered interlocutory and, therefore, not appealable. A party could, nevertheless, test the validity of such an order by refusing to obey and defending in a contempt proceeding. An order of contempt is clearly appealable. [Citations.]
>
> The absence of an order of contempt in this case, however, does not deprive us of jurisdiction over the matter, since we conclude the order of the circuit court was final and not interlocutory. An

order which in substance finally adjudicates the rights of the parties and terminates the litigation is final and appealable. [Citation.] Here, the proceeding before the circuit court was a separate, independent action. [Citation.] After the court ordered the recusant witness to testify and produce the records, the proceeding before it was terminated."

■■ In the instant case, "[t]he order of the court finally determined the rights of the parties before it and terminated the litigation" (*Laurent*, 74 Ill. App. 3d 214, 216), between Currie and defendant Otlewis as regards the deposition subpoena. The order was thus final and appealable.

Otlewis also contends "the stay of the order was improper since it was pursuant to Section [8] of the Reporter's Privilege Act and not Supreme Court Rule 305 [Ill. Rev. Stat. 1979, ch. 110A, par. 305]."

We need not address this issue. Supreme Court Rule 305(b)(1), (Ill. Rev. Stat. 1979, ch. 110A, par. 305(b)(1)), dealing with stays of nonmoney judgments and orders, was fully complied with.

On the merits, Currie contends he did not waive his statutory or constitutional privilege and defendant did not meet the requirements of the Reporter's Privilege Act for divestiture of the privilege. (Ill. Rev. Stat. 1979, ch. 51, par. 117.) Defendant Otlewis concedes he did not meet these requirements of the Act. However, he contends the trial court's ruling was proper because Currie waived any privilege he may have had as a newspaper reporter by reason of his disclosures of information to plaintiff.

We need not discuss the constitutional issue of privilege involved herein. In our opinion, the issue of whether there has been a waiver of the statutory privilege under the Illinois Reporter's Privilege Act is dispositive. In any event, it is clear this act incorporates the guarantees of a free press under the first amendment to the United States Constitution and under article I, section 4 of the Illinois Constitution of 1970.

Section 1 of the act provides (Ill. Rev. Stat. 1979, ch. 51, par. 111):

> "No court may compel any person to disclose the source of any information obtained by a reporter during the course of his employment except as provided in this Act. The privilege conferred by this Act is not available in any libel or slander action in which a reporter or news medium is a party defendant."

Section 2 defines the following terms (par. 112):

> "a. 'reporter' means any person regularly engaged in the business of collecting, writing or editing news for publication through a news medium; and includes any person who was a reporter at the time the information sought was procured or obtained.
> * * *

c. 'source' means the person or means from or through which the news or information was obtained."

This act reflects "a paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters, an interest which has always been a principal concern of the First Amendment." *Baker v. F & F Investment* (2d Cir. 1972), 470 F.2d 778, 782, *cert. denied* (1973), 411 U.S. 966, 36 L. Ed. 2d 686, 93 S. Ct. 2147, citing *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710.

■■ Otlewis has attempted to analogize the purported waiver of the privilege here with judicially accepted waivers of other evidentiary privileges, such as attorney-client, psychiatrist-patient, and informer's privileges. However, in view of the nature of the Reporter's Privilege Act, such an analogy is not valid. While these other privileges are designed to protect the identity of an informer or confidential communications (see, *e.g., People v. O'Connor* (1976), 37 Ill. App. 3d 310, 314-15, 345 N.E.2d 520 (attorney-client); *People v. Givans* (1967), 83 Ill. App. 2d 423, 429-30, 228 N.E.2d 123 (psychiatrist-patient); *People v. Avery* (1978), 61 Ill. App. 3d 327, 377 N.E.2d 1271 (informers)), the privilege under this act protects a reporter from being compelled to disclose "the source of any information obtained * * * during the course of his employment * * *." Ill. Rev. Stat. 1979, ch. 51, par. 111.

As quoted above, the definition of "source" makes no distinction between confidential and nonconfidential "person or means from or through which the news or information was obtained." (Ill. Rev. Stat. 1979, ch. 51, par. 112.) The district court in this State has held (*Gulliver's Periodicals, Ltd. v. Chas. Levy Circulating Co.* (N.D. Ill. 1978), 455 F. Supp. 1197, 1204, quoting *Loadholtz v. Fields* (M.D. Fla. 1975), 389 F. Supp. 1299, 1303):

" '[T]his distinction is utterly irrelevant to the 'chilling effect' that the enforcement of these subpoenas would have on the flow of information to the press and to the public. The compelled production of a reporter's resource materials is equally as invidious as the compelled disclosure of his confidential informants.' "

We have found no case law in Illinois which deals with the waiver of this unique statutory privilege. Able counsel for both parties have referred us to cases in other jurisdictions. However, libel cases cited by counsel, in which the reporter or the news medium involved was a party defendant, are not helpful. Section 1 of the act states the privilege is not available in such a case. Also, citation by defendant Otlewis of *In re Farber* (1978), 78 N.J. 259, 394 A.2d 330, *cert. denied sub nom. New York Times Co. v. New Jersey* (1978), 439 U.S. 997, 58 L. Ed. 2d 670, 99 S. Ct. 598, does not assist us. That case involved a criminal defendant's

constitutional right " 'to have compulsory process for obtaining witnesses in his favor.' " (78 N.J. 259, 272, 394 A.2d 330, 336, quoting the sixth amendment to the United States Constitution.) The New Jersey Supreme Court compelled the reporter there to disclose his sources of information sought by defendant because of this overriding sixth amendment right, despite the existence of a reporter's "Shield Law" similar to ours. The court specifically stated, "In view of the fundamental basis of our decision today, the question of waiver of privilege under the Shield Law need not be addressed by us." 78 N.J. 259, 271, 394 A.2d 330, 335.

One persuasive authority has been cited by Currie and responded to by defendant Otlewis. In *Altemose Construction Co. v. Building & Construction Trades Council* (E.D. Pa. 1977), 443 F. Supp. 489, plaintiff had served a subpoena duces tecum on a program manager of a television station. The subpoena directed the program manager to bring to his deposition affidavits and written statements he had collected from certain individuals concerning the principal case. Plaintiff contended any claim of privilege had "been waived by the disclosure of the affidavits to third parties and the numerous references to those affidavits in the course of the broadcast by both the interviewer and the affiants." 443 F. Supp. 489, 490.

The district court noted the pertinent law in Pennsylvania provided "all of a newsman's 'sources' * * * are privileged, without reference to their confidentiality." (*Altemose*, 443 F. Supp. 489, 491, citing Pa. Stat. tit. 28, §330(a) (Supp. 1976-77).) The court rejected the plaintiff's claim of the waiver of the privilege and quashed the subpoena, stating (443 F. Supp. 489, 491):

> "The appearance of the 'sources' on television, and their discussion of the sought-after affidavits in general terms, does not warrant a different conclusion. The submission of the affidavits to two law enforcement functionaries by the affiants is a far cry from thousands of occupants opening the windows of their respective apartments and shouting a message for the world to hear."

■■ Similarly, in the instant case, we do not believe Currie's actions constituted a "waiver" of his statutory privilege. If the privilege was limited to confidential sources, Currie would have waived it by disclosure of these sources to Mulack. However, the privilege applies to all of his sources, "without reference to their confidentiality." Thus, to find that Currie waived his privilege, simply because he revealed some of his sources to the Special Assistant Attorney General, would defeat the express purpose of this legislation.

Defendant Otlewis urges Currie acted as a "leg man" for the Attorney General and motivated the Attorney General's Office to commence the present civil proceedings against the Museum and its directors.

If, as Otlewis contends, "Currie abandoned the role of newspaper reporter and assumed the duties of an investigator," then arguably he waived his reporter's privilege. However, the record before us does not show this was the situation here. Mulack testified the first two times Currie contacted him, Currie asked him questions about the status of the investigation of the Museum but did not provide him with information. The third time, Currie "wanted to know if the sale of assets in New York was legal, could the Museum do it." The Attorney General was investigating the Museum even before these contacts with Currie and there is no evidence that Currie "personally motivated" the present action as charged by Otlewis. Currie's disclosure of the sale of the Museum assets first appeared in one of his stories, and his conversation with Mulack subsequent to the publication of the story was simply to check on what the Attorney General was planning to do.

Currie's "regular contacts" with Mulack were clearly within the scope of Currie's role as a newspaper reporter and any information Currie may have given to Mulack concerning his news-gathering efforts, most of which was made public in Currie's articles, did not cause Currie to forfeit his privilege as a reporter. We thus hold there was no waiver here.

In our opinion, the delay of the trial on the merits because of the within appeal is unjustified. The information sought by Otlewis from Currie is the same information defendant obtained in Mulack's deposition. Supreme Court Rule 201(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 201(a)) provides in part, "Duplication of discovery methods to obtain the same information should be avoided." Otlewis and the remaining defendants are not prejudiced in the least by lack of an opportunity to depose Currie. We have already noted the unfortunate and inexplicable delay in trial of the principal case upon the merits. (*Silverstein*, 86 Ill. App. 3d 605, 611.) Our opinion remains unchanged. If future criticism of any kind from any source is directed against delay in disposition of the principal litigation herein, this court will not share the responsibility.

The order appealed from is reversed.

McGLOON and CAMPBELL, JJ., concur.