483 So.2d 727 (1985)
Gregory KRIDOS, Petitioner,
v.
Richard V. VINSKUS, Respondent.
No. 85-1903.
District Court of Appeal of Florida, Fourth District.
December 26, 1985.
Rehearing Denied March 19, 1986.
*728 Robert W. Wennerholm, Asst. City Atty., City of Fort Lauderdale, for petitioner.
Paul Stark, of Franken & Stark, Plantation, for respondent.
GLICKSTEIN, Judge.
This is a petition for writ of common law certiorari to review a Broward County circuit court order denying witness'/petitioner's motion to quash a subpoena for deposition. We grant the petition.
Gregory Kridos is a detective in the Fort Lauderdale Police Department. He was subpoenaed by one Andrew Ruppert for deposition. At deposition Ruppert's counsel told Kridos he would be asked to give testimony respecting his knowledge of criminal investigative techniques in connection with narcotics violations and the street value of narcotics in the area. Ruppert's counsel told Kridos that his client had been arrested by another Broward County police agency. Kridos said he had no direct knowledge of the investigation leading to Ruppert's arrest and that his department was not involved therein. Kridos called the assistant city attorney by phone. The latter talked both with Kridos and with Ruppert's counsel and advised Kridos Kridos had no legal duty to testify. Kridos left, and Ruppert filed a motion for contempt order.
Respondent Richard V. Vinskus and the late Andrew Ruppert were arrested by officers of the Margate Police Department. Ruppert was charged with trafficking in cannabis and conspiracy; Vinskus was charged only with trafficking. The men allegedly bought marijuana from undercover Margate police officers. Ruppert has since died; but with the trial court's approval, Vinskus has adopted Ruppert's subpoena, the proceedings, and subsequent orders of the court.
At the hearing on the motion for contempt order, Vinskus' counsel said he did not know whether he had ever stipulated that Kridos had no direct knowledge of the facts of this case; but that he intended to ask Kridos about matters of which Kridos does have direct knowledge, such as the price of marijuana on a particular day. The defense was exploring the theory that the police entrapped the defendants by offering marijuana at a price so low compared with the price on the street that defendants couldn't refuse. The defense indicated they could not effectively seek such testimony from street sellers or buyers, but needed to get the information from police officers. Another possible defense theory was that the defendants paid more than the amount for which the officers accounted, because the officers lost or pocketed some of the money. Kridos' counsel argued street people or convicted persons could supply the price information the defense was seeking. The trial court was at the least skeptical that this was so and indicated the information sought may not be admissible as evidence but might lead to other relevant information, and expressed concern that Kridos did not wish to testify and possibly was being guided by a policy of favoring the prosecution over the defense. Kridos' counsel contended to require Kridos to testify would be involuntary servitude under the thirteenth amendment. The respondents indicated they were prepared to pay a witness fee and did not expect Kridos to testify without remuneration.
The trial court denied the contempt order and ordered Kridos to appear for deposition *729 in order to testify in the limited area of inquiry discussed at the hearing, including whether a police officer would "front" a certain amount of marijuana the first time  unless a motion to quash the outstanding subpoena was filed and granted. Kridos filed such a motion and accompanied it with an affidavit of Chief Ronald Cochran of the Fort Lauderdale Police Department, stating Kridos in his official capacity had no duty to testify as an expert witness for defendants and would not be paid by the city for such activity. A second affidavit, signed by Captain Eric Hedlund of the same department's organized crime division, named two police informants (apparently) who would be willing to testify on 1984 narcotics prices and on narcotics sellers' propensity to "front" part of the narcotics being sold when in a first deal with the buyers. Hedlund's affidavit also suggested a magazine and a book about drugs as information sources, as well as public records such as police reports on investigations of illicit drug trafficking. The purpose of this affidavit obviously was to show there were alternative sources of the kinds of information respondents/defendants were seeking from Kridos.
At the hearing on the quashal motion, the trial court rejected "High Times," the drug magazine, as a source of price information for illicit drugs, and discounted the relevance of the book The White Stuff. It inferred from the affidavit of the Fort Lauderdale police chief that the police department sees itself as allied with the prosecution against defendants, and it expressed the view that police are not to be partisan but are to present evidence impartially to the court, which determines the issue impartially between the citizen and his government. The trial court denied the motion to quash the subpoena, giving the city time to appeal. Subsequently, Ruppert died. An order permitting Vinskus to adopt the subpoena, and that which subsequently transpired in connection with it, was then entered.
The issue is whether the trial court departed from the essential requirements of law when it denied the petitioner's motion to quash a deposition subpoena issued on behalf of a criminal defendant, thus compelling petitioner, a police officer of a different municipality, who has no direct knowledge of the criminal case, to testify at a deposition as an expert witness, while off-duty. We conclude that it did.
Petitioner raises several arguments to support his contention that denial of his motion to quash the deposition subpoena was error. First, he contends that an expert is usually employed by a party, and if the expert subsequently refuses to be deposed by the adverse party, sanctions are ordinarily imposed, not on the expert, but on the party that employed him.
Secondly, petitioner asserts that to use compulsory process to obtain testimony of an expert who has no knowledge of a case may impinge on his constitutional liberty and property rights, and implicate the privacy provision of the Florida Constitution. He suggests an expert should have the same protection under the Florida Constitution's privacy provision as a reporter has been found to have under other constitutional provisions or under pre-constitutional common law. In civil cases, for example, there is a three-pronged test for determining whether a news media person should be compelled to testify: The information sought must be relevant; it must not be possible to obtain the information by alternative means, and there must be a compelling interest in the information. Gadsden County Times, Inc. v. Horne, 426 So.2d 1234 (Fla. 1st DCA 1983), and Johnson v. Bentley, 457 So.2d 507 (Fla. 2d DCA 1984).
Petitioner argues that expert witnesses are entitled to the same protection from frivolous discovery demands as it is suggested the Florida Constitution affords an ordinary non-party witness. The Fifth District Court of Appeal has indicated that, because the subpoena process, accompanied by the threat of contempt, constitutes state action, it may be a violation of the privacy provision of the Florida Constitution to require a non-party witness to testify, *730 if it is not evident or has not been shown that the information sought is reasonably calculated to lead to discovery of admissible evidence. Calderbank v. Cazares, 435 So.2d 377 (Fla. 5th DCA 1983). Petitioner points out that it was held in the earlier case of Young v. Metropolitan Dade County, 201 So.2d 594 (Fla. 3d DCA 1967), that the trial court in its discretion could quash a deposition subpoena of a physician who swore in his affidavit that he had no knowledge of the facts of the malpractice suit; had neither examined nor treated the patient, and had not agreed to be an expert witness for either party.
Respondent opposes all these arguments, contending, inter alia, that in criminal cases, the sixth amendment right to compulsory process to assist one's defense is implicated, see Green v. State, 377 So.2d 193, 202 (Fla. 3d DCA 1979), certified question answered, 395 So.2d 532 (Fla. 1981), reversed on other grounds on appeal after remand, 427 So.2d 1036 (Fla. 3d DCA 1983); and that public policy demands that police experts be equally available to the defense as to the prosecution. To support this proposition, respondent cites only the case of Sun Charm Ranch, Inc. v. City of Orlando, 407 So.2d 938 (Fla. 5th DCA 1981) (in eminent domain case, landowner was entitled to call as his witness, at trial, appraiser originally retained by condemnor). The analogy to the instant case appears strained.
An expert witness, according to Florida Rule of Civil Procedure 1.390(a), is only one "duly and regularly engaged in the practice of his profession, who holds a professional degree from a university or college and has had special professional training and experience or one possessed of special knowledge or skill about the subject upon which he is called to testify." (Emphasis added.) We refer to this and other civil procedure rules because the Florida Rules of Criminal Procedure inform us at rule 3.220(d) that the procedure for taking a deposition pursuant to the criminal procedure discovery rule, including the scope of the examination, is the same as is provided in the civil procedure rules, except as the criminal procedure rules provide otherwise. The same criminal procedure rule goes on later to state, without reference to whether the person subpoenaed is a regular witness or an expert witness, that one who refuses to obey a subpoena served upon him may be adjudged in contempt of the court from which the subpoena issued.
According to the scope of discovery provision of the civil procedure rule, parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party. Rule 1.280(b). One may not object that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Id.
Most appellate case law in Florida and elsewhere involving attempted deposition of expert witnesses concerns experts retained by one party and sought to be deposed by an adverse party. There is relatively little appellate case law involving situations in which an expert simply did not want to be deposed by or appear at trial for anyone. Generally it is held that an expert may be compelled to testify as to a matter of fact within his knowledge, even though special study, learning, skill or experience was involved in the acquisition of that knowledge; whereas the jurisdictions appear to be divided as to whether an expert may be compelled to testify as to his expert or professional opinion. Annot. 77 A.L.R.2d 1182, 1186-87 (1961). In some jurisdictions, the question is merely whether the opinion of an expert witness may be demanded without compensation. Id. at 1187.
Any difference among the different expressions of courts in representative cases concerned with compelled testimony of expert witnesses is superficial.[1] These cases *731 point up that, whether in a criminal or a civil case, an expert not retained by the adverse party may not willy nilly be compelled to testify purely because he is an expert, but only because he has information bearing rather directly on the case. We can come to the same conclusion by merely construing the procedure rules cited earlier. We believe this to be the rationale implicit in Young v. Metropolitan Dade County.
Thus it is a fair statement of the law that an expert not retained by a party and not having information reasonably calculated to lead to admissible evidence is no more required to testify than any other person in like circumstances. As the Fifth District Court of Appeal stated in Calderbank v. Cazares, it is up to the questioner, where the logical connection between the information sought and possibly relevant evidence is not apparent, to demonstrate to the court via his reasoning process based on facts and inferences, how he calculates such a connection. 435 So.2d at 379. It is not enough that the questioning, though it appears to be irrelevant, might lead to relevant and admissible evidence.

I
We are hesitant to follow the Calderbank court to its seeming conclusion that the witness' constitutional privacy rights under article I, section 23 of our constitution are implicated because the subpoena and the threat of a contempt citation constitute state action. We think it unnecessary to reach a constitutional question, and do not see this as an appropriate case in which to put flesh on the bare bones privacy rights provision. One who could shed no light on the issues of a case, civil or criminal, did not have to testify at deposition or trial, long before there was a constitutional privacy provision in Florida. Instead, we liken petitioner Kridos' position to that of the physician, the taking of whose deposition was quashed in Young v. Metropolitan Dade County.[2]

II
At two separate hearings the accused's counsel indicated the nature of the proposed questioning of Detective Kridos. They wished to ask him the going price of marijuana at the time of the defendants' alleged crimes, and to learn from him about investigation procedures commonly used by police in investigating drug sale and similar crimes, including whether in a first transaction police will "front" some of the drugs they are pretending to sell. Counsel appeared not to satisfy the court that this line of questioning could lead to admissible evidence relating to an entrapment defense, as counsel contended it would. Yet the court insisted that Kridos testify.
*732 An essential element of the defense of entrapment is the accused's lack of a predisposition to commit the offense. United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); State v. Dickinson, 370 So.2d 762 (Fla. 1979). Law enforcement officers may not lure persons into committing a crime who are otherwise innocent. But if the officers have sold the marijuana at a cut rate, as counsel suggested defendants may claim, or sold it at a higher price than they admitted and pocketed the difference  another possibility posed by counsel  there has been no showing of entrapment, even if either of these theories is proven to be true. We think it clear that Kridos could effectively assist neither the defendants nor the prosecution in this case.[3]
DOWNEY and HURLEY, JJ., concur.

ON MOTION FOR REHEARING
GLICKSTEIN, Judge.
We deny the above motion but consider it worthwhile to respond to the concerns expressed therein in the hope of eliminating any lack of clarity.
Our holding was that it was error to compel this expert to testify when he had not been retained by the party and had no specific knowledge of the case, in contrast to general knowledge the individual may have by virtue of being an expert.
Our discussion of entrapment was dictum, and the gist of the holding was not that the detective's testimony would not be relevant.
DOWNEY, J., and HURLEY, DANIEL T.K., Associate Judge concur.
NOTES
[1] Compare Hessek v. Roman Catholic Church of Our Lady of Lourdes in Queens Village, 80 Misc.2d 410, 363 N.Y.S.2d 297 (N.Y. Civ. Ct. 1975), (expert may be compelled to testify as facts within his knowledge but not as to his expert opinion); In re Estate of Rothko, 80 Misc.2d 140, 362 N.Y.S.2d 673 (N.Y. Sup. Ct. 1974), (art expert would not be compelled to testify on his expert opinions as to various art pricing practices); and Commonwealth v. Vitello, 367 Mass. 224, 327 N.E.2d 819 (Mass. 1974), (unavailability to testify at trial of expert who testified preliminarily on the voice print method of recorded voice identification, who had no personal knowledge of matters before the jury, was not violation of defendant's Sixth Amendment protections); with In Re Estate of Stevens, 46 Misc.2d 342, 259 N.Y.S.2d 449 (N.Y. Sup. Ct. 1965) (self-styled expert who had claimed he had documentary evidence pertinent to probate case would be denied protective order against discovery).
[2] We realize that this case differs from the present one, in that the trial court there quashed the taking of the deposition and this action of the judge was held not to be an abuse of discretion; whereas here the trial court refused to quash the subpoena to be deposed and this court is being asked to find the judge's action a departure from the essential requirements of law. Moreover, the Young court does not expressly state the rationale for its conclusion beyond noting that the physician had filed an affidavit that he had no knowledge of the facts, had not agreed to be an expert witness for either party and had never examined or treated the plaintiff.
[3] We reject petitioner's analogy to reporters' confidential source cases, because the latter have peculiar first amendment or common law implications. Likewise, there is no logic to respondent's apparent contention that Kridos needed to be able to show reliable alternative sources for the information being sought. The information being sought was clearly irrelevant; the defense could make no credible use of it either to defend against the prosecution's case or to make a case of its own.