*In re* SUBPOENA *DUCES TECUM* TO BOB ARYA (The People of the State of Illinois, Plaintiff-Appellee, v. Robert Arya, Defendant-Appellant).

Fourth District   No. 4—91—0825

Opinion filed February 28, 1992.

McCULLOUGH, J., dissenting.

Donald M. Craven, of Donald M. Craven, P.C., of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:
Defendant, Robert Arya, a reporter for a Peoria television station, possesses videotapes and notes pertaining to a triple murder and armed robbery. The State believes these materials contain the names and interviews of at least three persons who have significant information pertinent to its investigation of these crimes. The State also believes that an as yet uncharged participant in these crimes admitted his participation to at least one of these individuals. On the State's petition, the trial court divested defendant of his reporter's privilege, as provided in section 8—901 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 8—901), and ordered defendant to

produce the videotapes and notes. Defendant refused to do so. The court held him in contempt of court and ordered him jailed until he produced these materials. Defendant appeals, and we vacate and remand.

## I. FACTS

On October 27, 1988, an armed robbery was committed at the S & S Liquor Store in Bloomington, Illinois. During the robbery, three patrons were killed and the store clerk was severely beaten. As a result of a three-year, intensive investigation, which consumed more than 2,000 hours of investigators' time, the State gathered sufficient evidence to charge two suspects with these crimes. However, the State has delayed proceeding with those prosecutions until it can charge a third suspect, whom the State wishes to try jointly with the other suspects.

Defendant conducted an independent investigation of the S & S robbery as a reporter for Peoria television station WHOI. During the course of that investigation, he spoke with several people who provided defendant with what he termed "important information" regarding the S & S crimes. Some of these people allowed defendant to videotape or audiotape his interviews of them, while others limited defendant to merely taking notes. All of these individuals told defendant that they wanted their identity shielded and that they would not speak to the police. One of these individuals told defendant that the third suspect had admitted to that individual that he had driven the getaway car in the S & S robbery.

Between August 1 and August 15, 1991, defendant spoke to Officer Dan Katz of the Bloomington police department and told him about the tapes and notes. Defendant told Katz that he thought the police should have them because of the seriousness of the crimes. However, although defendant told Katz the name of the uncharged suspect (based upon what defendant's sources had told him), defendant did not tell Katz the names of his sources. Defendant expressed doubt over whether he should turn his material over to the police because of his duty to protect the confidentiality of his sources. Since those discussions, defendant's doubts about revealing his sources have solidified from hesitancy to an outright refusal to disclose.

On September 17, 1991, the State brought this action under section 8—903 of the Code to divest defendant of his statutory reporter's privilege. (Ill. Rev. Stat. 1989, ch. 110, par. 8—903.) Specifically, the State requested the circuit court to divest defendant of any privilege regarding the following material:

"Any and all memoranda, notes, statements, written or otherwise recorded, including video or audio tape recordings, of or concerning statements or conversations with or concerning individuals professing to have personal information concerning the S & S armed robbery/triple homicide case, including persons professing to have heard confessions or admissions of individuals purporting to have been involved in the commission of said offense or in aiding or abetting the commission of said offense."

At the hearing on the petition, both Katz and Arya testified. Other evidence at the hearing revealed that the police investigation had produced 12,000 to 15,000 pages of discovery in the prosecutions against the two charged suspects. The record suggests that the police have spoken with the uncharged suspect, his family, and many of his friends and acquaintances, but have not received any evidence of the suspect's alleged confession. For whatever reason, the third suspect has not yet been charged.

The trial court granted the State's petition for divestiture and ordered defendant to give his tapes and notes on the S & S murders to the grand jury. Defendant refused to comply with the court's order. On November 7, 1991, the court found him in indirect contempt of court and ordered him imprisoned until he complied with the order to produce the tapes and notes. Arya appeals that order and was released on bond pending this appeal.

## II. The Reporter's Privilege

### A. The Reporter's Privilege Generally

In *Branzburg v. Hayes* (1972), 408 U.S. 665, 33 L. Ed. 2d 626, 92 S. Ct. 2646, the United States Supreme Court rejected the argument that a reporter had an *absolute* privilege not to testify about a crime that he had himself witnessed. (*Branzburg*, 408 U.S. at 692, 33 L. Ed. 2d at 646, 92 S. Ct. at 2662.) However, the Court left open the question of whether a reporter has a *qualified* privilege not to testify about information obtained from the reporter's sources. *Branzburg*, 408 U.S. at 703-09, 33 L. Ed. 2d at 653-56, 92 S. Ct. at 2668-70.

Since *Branzburg*, many courts and legislatures have addressed the issue of a reporter's privilege, and several States have adopted rules governing that privilege similar to those suggested by Justice Stewart in his dissent in *Branzburg*. In that dissent, Justice Stewart proposed the following test that the government must meet before re-

porters would be compelled to testify about confidential information they obtained from their sources:

> "[T]he government must (1) show that there is probable cause to believe that the newsman has information that is clearly relevant to a specific probable violation of law; (2) demonstrate that the information sought cannot be obtained by alternative means less destructive of First Amendment rights; and (3) demonstrate a compelling and overriding interest in the information." *Branzburg*, 408 U.S. at 743, 33 L. Ed. 2d at 676, 92 S. Ct. at 2681 (Stewart, J., dissenting).

The objective of the reporter's privilege is to preserve the autonomy of the press by allowing reporters to assure their sources of confidentiality, thereby permitting the public to receive complete, unfettered information. (*Smith v. Zerilli* (D.C. Cir. 1981), 656 F.2d 705, 710-11.) In *United States v. Criden* (3d Cir. 1980), 633 F.2d 346, 356, the court asserted that the privilege protects anonymous sources from retribution for revealing publicly valuable—though damaging or even damning—information. In addition, the privilege allows information to flow more freely from confidential, anonymous sources if they can tell the reporter, "[D]on't tell anyone I told you, but...." (See *Criden*, 633 F.2d at 355.) Also, the privilege allows public figures and politicians, who have access to crucial information, to test new ideas by anonymously providing information and ideas to the press without adverse consequences if the new ideas are not well received by the public. *Criden*, 633 F.2d at 356.

### B. *Illinois Law*

In 1971, Governor Ogilvie stated the following upon his signing the Illinois reporter's privilege into law:

> "['This] Act is more than a declaration of fair play for newsmen. It also assures a better informed public, for it allows reporters to seek the truth wherever it is to be found, without fear that their sources of information will be cut off by unnecessary disclosures.[']
>
> *Editor & Publisher*, October 10, 1971, [at] 14, col. 2." *Baker v. F & F Investment* (2d Cir. 1972), 470 F.2d 778, 782 n.7.

▪ In Illinois, reporters have a statutory, qualified privilege that protects the anonymity of their sources, whether confidential or nonconfidential. (Ill. Rev. Stat. 1989, ch. 110, par. 8—901.) However, a court is statutorily authorized to order the reporter's privilege divested when the petitioner seeking divestiture (in a nonlibel case like this) proves that (1) no other law prevents it, (2) all other available

sources have been exhausted, and (3) the information obtained by the reporter is essential to protect the public interest involved. (Ill. Rev. Stat. 1989, ch. 110, pars. 8—907(1), (2).) The statutes pertinent to the present case read as follows:

"8—901. Source of information. No court may compel any person to disclose the source of any information obtained by a reporter except as provided in *** this Act." Ill. Rev. Stat. 1989, ch. 110, par. 8—901.

"8—902. Definitions. As used in this Act:

(a) 'reporter' means any person regularly engaged in the business of collecting, writing or editing news for publication through a news medium ***.

(b) 'news medium' means *** a television station ***.

(c) 'source' means the person or means from or through which the news or information was obtained." Ill. Rev. Stat. 1989, ch. 110, par. 8—902.

"8—903. Application to court. (a) In any case, except a libel or slander case, *** the person *** seeking the information so privileged may apply in writing to the circuit court *** for an order divesting the person named therein of such privilege and ordering him or her to disclose his or her source of the information." Ill. Rev. Stat. 1989, ch. 110, par. 8—903(a).

"8—904. Contents of application. The application *** shall allege: the name of the reporter ***; the specific information sought and its relevancy to the proceedings; and *** a specific public interest which would be adversely affected if the factual information sought were not disclosed ***." Ill. Rev. Stat. 1989, ch. 110, par. 8—904.

"8—905. Civil Proceeding. All proceedings in connection with obtaining an adjudication upon the application *** shall be as in other civil cases." Ill. Rev. Stat. 1989, ch. 110, par. 8—905.

"8—906. Consideration by court. In granting or denying divestiture of the privilege *** the court shall have due regard to the nature of the proceedings, the merits of the claim or defense, the adequacy of the remedy otherwise available, if any, the relevancy of the source, and the possibility of establishing by other means that which it is alleged the source requested will tend to prove." Ill. Rev. Stat. 1989, ch. 110, par. 8—906.

"8—907. Court's findings. An order granting divestiture of the privilege provided in *** this Act shall be granted only if the court, after hearing the parties, finds:

(1) that the information sought does not concern matters, or details in any proceeding, required to be kept secret under the laws of this State or of the Federal government; and

(2) that all other available sources of information have been exhausted and *** disclosure of the information sought is essential to the protection of the public interest involved ***." Ill. Rev. Stat. 1989, ch. 110, par. 8—907.

▇ No law requires the information in the present case to be kept secret, and defendant conceded at oral argument that he was not challenging the trial court's finding that the sought-after information is essential to protect the public interest involved. Thus, this appeal presents the sole question of whether the State met its burden of proving that it has exhausted all other available sources of information. See Ill. Rev. Stat. 1989, ch. 110, par. 8—907(2).

Although the State's petition to divest defendant of his reporter's privilege concerns a criminal investigation, the civil burden of proof—proof by a preponderance of the evidence—applies because section 8—905 of the Code directs that divestiture proceedings shall be conducted as civil proceedings. (Ill. Rev. Stat. 1989, ch. 110, par. 8—905.) Likewise, we cannot reverse the trial court's factual findings on appeal unless they are against the manifest weight of the evidence. See *Kalata v. Anheuser-Busch Cos.* (1991), 144 Ill. 2d 425, 433-34, 581 N.E.2d 656, 660-61.

Only two reported Illinois cases have dealt with the Illinois reporter's privilege. The first, *People ex rel. Scott v. Silverstein* (1980), 89 Ill. App. 3d 1039, 412 N.E.2d 692, *rev'd & remanded on other grounds* (1981), 87 Ill. 2d 167, 429 N.E.2d 483, did not address the issue of exhaustion of all other available sources. Instead, the appellate court reviewed the trial court's order that the reporter must produce the sought-after information because, by disclosing some of his sources, he had waived the reporter's privilege as to all of his sources. (*Scott*, 89 Ill. App. 3d at 1042, 412 N.E.2d at 694.) The appellate court reversed, holding that the reporter had not waived the privilege by disclosing some of his sources. (*Scott*, 89 Ill. App. 3d at 1045, 412 N.E.2d at 696.) The court then declined to consider other issues, holding instead that its decision on the waiver issue disposed of the appeal. *Scott*, 89 Ill. App. 3d at 1042, 412 N.E.2d at 694.

The second case to address the Illinois reporter's privilege, *In re Special Grand Jury Investigation of Alleged Violation of the Juvenile Court Act* (1984), 104 Ill. 2d 419, 472 N.E.2d 450 (hereinafter *Warden*), asked all the right questions regarding exhaustion of other available sources (see *Warden*, 104 Ill. 2d at 425, 472 N.E.2d at 452-53),

but supplied very few answers. However, the supreme court did note that "[t]he controlling standard [on exhausting all other available sources] has not been defined uniformly [from State to State]." (*Warden*, 104 Ill. 2d at 426, 472 N.E.2d at 453.) After listing the varying standards from other States and from the Federal courts (and noting that when applying the same standards, courts have reached inconsistent results), the supreme court did not adopt a legal standard for this State for determining exhaustion. Instead, the court wrote that "the extent to which an investigation must be carried before the reporter's privilege should be divested cannot be reduced to any precise formula or definition but must, in view of the competing interests involved, depend on the facts and circumstances of the particular case." *Warden*, 104 Ill. 2d at 427, 472 N.E.2d at 453-54.

In *Warden*, the Chicago Lawyer newspaper published an article written by defendant Warden that quoted inappropriate language used by a trial judge during a confidential juvenile proceeding. The Illinois Judicial Inquiry Board subsequently brought, but later dismissed, a complaint against the judge for those remarks. The circuit court then appointed a special prosecutor to investigate who leaked the transcripts of the juvenile proceeding to the press. The special prosecutor sought to compel Warden to testify before the grand jury and to disclose who had provided him with the transcripts. Warden invoked the reporter's privilege and refused to reveal his source. The special prosecutor then brought an action in circuit court to divest Warden of that privilege.

The circuit court granted the State's petition, divested Warden of the reporter's privilege, and ordered him to disclose his source. The circuit court found him in contempt of court when he refused. The supreme court reversed, holding that the State had not exhausted all other available sources as required by section 8—907(2) of the Code. (See Ill. Rev. Stat. 1989, ch. 110, par. 8—907(2).) In so holding, the court noted that four Du Page County prosecutors had access to the transcripts, but the special prosecutor had called only one to testify before the grand jury. (*Warden*, 104 Ill. 2d at 428-29, 472 N.E.2d at 454.) The court then said that "[t]he sworn testimony of these [other three] persons could easily have been obtained, and the possibility that they might have provided relevant information to the grand jury is apparent." (*Warden*, 104 Ill. 2d at 428, 472 N.E.2d at 454.) The court rejected the special prosecutor's suggestion that he need not call the other three prosecutors before the grand jury if he could first divest Warden of the privilege and obtain from him the name of the person who leaked the information. (*Warden*, 104 Ill. 2d at 428-29,

472 N.E.2d at 454.) The court held that this suggestion "is precisely the reverse of that intended by the General Assembly." (*Warden*, 104 Ill. 2d at 428, 472 N.E.2d at 454.) The court concluded by holding that in order to prove that it has exhausted all its available sources, the State must call those other witnesses before seeking to divest Warden of his reporter's privilege. *Warden*, 104 Ill. 2d at 428, 472 N.E.2d at 454.

## C. *The Law in Other States and Federal Courts*

Because this case presents an issue not yet definitively resolved in Illinois, we have analyzed decisions from other jurisdictions to see what light they shed. We do so even though no law in other jurisdictions reads precisely the same as Illinois' law on the reporter's privilege.

The case we found most similar to the present one is a Florida criminal case, *Tribune Co. v. Green* (Fla. Dist. Ct. App. 1983), 440 So. 2d 484, 486, in which the court held that the State had not met its burden of showing that it had exhausted all available resources. In *Green*, a reporter conducted interviews with several people concerning the alleged influence one judge exerted upon another judge not to impose a prison sentence on a convicted defendant. That defendant was the daughter of a friend of the first judge. The friend had allegedly forgiven some of the first judge's gambling debts and provided other financial favors in return for his favorable influence. *Green*, 440 So. 2d at 485.

The State brought criminal charges against the first judge, and as a part of its case in chief, subpoenaed the reporter to testify concerning certain aspects of his investigation. The reporter moved to quash the subpoena, but the trial court denied that motion. He appealed, and the appellate court quashed his subpoena, vacated the order requiring him to testify, and explained its action as follows:

> "[A]ny person who can provide the same information as [the reporter] is an alternative source.
>
> The record before us demonstrates that the state has failed to take any steps to obtain testimony from any other available source." (*Green*, 440 So. 2d at 486.)

The court then named several potential witnesses other than the reporter whom the State could have, but did not, contact, and who could have supplied essentially the same information that the State sought from the reporter. (*Green*, 440 So. 2d at 486.) The court concluded by noting,

"[i]n view of their involvement in the charged misconduct, we feel that not only are they alternative sources but far better sources. It is inconceivable that [the reporter] could add anything more to the testimony of these 'first hand players.'" *Green*, 440 So. 2d at 486.

Florida does not have a reporter's privilege statute, but instead relies on the common law privilege established in that State. Some differences exist between the Florida common law reporter's privilege and the Illinois statutory reporter's privilege; for instance, the Florida privilege protects only confidential sources (*CBS, Inc. v. Jackson* (Fla. 1991), 578 So. 2d 698, 700), while the Illinois privilege protects both confidential and nonconfidential sources (*Scott*, 89 Ill. App. 3d at 1043, 412 N.E.2d at 695). However, the exhaustion prong of the test for divesting a reporter of the reporter's privilege is essentially the same in Florida as it is in Illinois: the petitioner must show that it has exhausted all alternative sources to obtain the sought-after information. (*Jackson*, 578 So. 2d at 699.) Thus, the analysis in *Green* applies to the exhaustion issue before us in the present case.

Three courts in civil cases have required a petitioner seeking divestiture of a reporter's privilege to depose all possible known sources of information before divestiture would be ordered. The most notable of these cases is *Zerilli v. Smith* (D.C. Cir. 1981), 656 F.2d 705, 707, in which the Justice Department, during its investigation of Zerilli and others for organized crime activity, eavesdropped on many of Zerilli's conversations. A Federal district court found these eavesdrops violated the fourth amendment and ordered their contents suppressed and sealed. (*Zerilli*, 656 F.2d at 707.) Despite that order, the Detroit News obtained information derived from these eavesdrops and published a news story entitled, "Inside the Mafia." (*Zerilli*, 656 F.2d at 707.) The article identified Zerilli as the Detroit mob leader. *Zerilli*, 656 F.2d at 707.

Zerilli and the others named in the news story sued the Justice Department for violating the Federal Privacy Act (5 U.S.C. §552a (1976)) and the fourth amendment. (*Zerilli*, 656 F.2d at 706 n.2.) In order to learn who at the Justice Department leaked the information contained in the news story, the aforementioned plaintiffs sought to depose the Detroit News reporter who wrote the story. However, claiming a reporter's privilege under the first amendment, the reporter refused to name his source at his deposition. *Zerilli*, 656 F.2d at 706-07.

Zerilli sought a court order directing the reporter to answer Zerilli's questions, but the trial court denied it and the appellate court af-

firmed. In affirming, the court noted that the petitioners knew whom to depose in order to receive the sought-after information, but instead sought first to compel the reporter to reveal his source of the information. (*Zerilli*, 656 F.2d at 714-15.) Although the petitioners argued that requiring them to depose a large number of Justice Department employees in pursuit of the sought-after information imposed an insurmountable barrier, the court disagreed and wrote the following:

> "Appellants cannot escape their obligation to exhaust alternative sources simply because they feared that deposing Justice Department employees would be time-consuming, costly, and unproductive. At the very least, they could have deposed the four employees who had the greatest knowledge about the [sought-after information]. It is quite possible that interviewing these four individuals could have shed further light on the question of whether the Justice Department was responsible for the leaks." *Zerilli*, 656 F.2d at 715.

In *Riley v. City of Chester* (3d Cir. 1979), 612 F.2d 708, 717, the court similarly reversed a lower court's contempt order against a reporter because the petitioners seeking divestiture had not shown that they had exhausted alternative sources. *Riley* involved a libel suit in which the plaintiff sought to compel a reporter to reveal the names of persons who leaked to her internal police department information that allegedly contained defamatory statements. (*Riley*, 612 F.2d at 710-11.) In reversing, the court in *Riley* noted that the trial court had merely found that " 'the information appears not to be available from other sources.' " (*Riley*, 612 F.2d at 717.) The appellate court held that "[t]he trial court's findings contain only a general assertion of necessity. The conclusory statements fall far short of the type of specific findings of necessity which may overcome the privilege." *Riley*, 612 F.2d at 717.

In another civil case, *Clampitt v. Thurston County* (1983), 98 Wash. 2d 638, 644, 658 P.2d 641, 645, the court dealt with a request to divest a reporter of the reporter's privilege and held that "the record does not support the trial court's finding that respondents had exhausted reasonably available alternative sources" because "the record does not indicate what alternatives the trial court considered and its reasons for rejecting them." The court specifically noted that the petitioner had not deposed 25 or more potential witnesses, of whom the petitioner would need to ask only two questions each in order to determine who among those 25 or more persons leaked the information in question. *Clampitt*, 98 Wash. 2d at 945, 658 P.2d at 645.

At least one court has not required a petitioner to depose all possible sources before a court will order divestiture of the reporter's privilege. In *Carey v. Hume* (D.C. Cir. 1974), 492 F.2d 631, 638, the appellant (defendant) could not describe an unknown source any more specifically than "an employee of the [United Mine Workers of America]." The court held that the appellee (petitioner) need not depose every union member in order to prove exhaustion, explaining as follows:

> "The courts must always be alert to [minimizing] impingements upon press freedom *** and one way of doing so is to make compelled disclosure by a journalist a last resort after pursuit of other opportunities has failed. But neither must litigants be made to carry wide-ranging and onerous discovery burdens where the path is as ill-lighted as that emerging from appellant's deposition." *Carey*, 492 F.2d at 639.

D. *The Reporter's Privilege As Applied to This Case*

Defendant first argues on appeal that the State failed to prove that it had exhausted all other available sources for obtaining the information it seeks from defendant. In particular, defendant argues that in order for the State to show that it has exhausted all other available sources, it must show that it has unsuccessfully used specific, alternative methods of investigation, such as undercover agents, informants, or other surreptitious forms of investigation, to obtain the sought-after information. We disagree with defendant's interpretation of what the Illinois reporter's privilege statute requires.

■ We have not found any case which required the petitioner to prove exhaustion of specific alternative methods of obtaining the sought-after information when the petitioner seeks to divest a reporter of his privilege. While courts require exhaustion of sources, none has required (as defendant in the present case suggests we require) the State in a criminal investigation to prove exhaustion of "alternative sources" of information by either conducting an undercover investigation or using informants in order to obtain evidence from witnesses who do not wish to speak to the police. We reject defendant's argument because law enforcement procedures or methods of investigation do not constitute sources of information; instead, these methods *produce* sources of information.

Justice Stewart referred to exhausting "alternative means" of obtaining the sought-after information. (*Branzburg*, 408 U.S. at 743, 33 L. Ed. 2d at 676, 92 S. Ct. at 2681 (Stewart, J., dissenting).) Although the reporter's privilege statute in some States uses the word

"means" (see, *e.g.*, Tenn. Code Ann. §24—1—208(c)(2)(B), at 9 (Supp. 1991) ("[t]he person has demonstrated that the information sought cannot reasonably be obtained by alternative means"); *State v. Rinaldo* (1984), 102 Wash. 2d 749, 755, 689 P.2d 392, 395-96 ("a reasonable effort has been made to acquire the desired information by other means")), other State and Federal courts have instead held that the petitioner must exhaust all other *sources* of information (see, *e.g., Zerilli*, 656 F.2d at 713; *Criden*, 633 F.2d at 358-59; *Riley*, 612 F.2d at 716-17; *NLRB v. Mortensen* (D.D.C. 1988), 701 F. Supp. 244, 248; *Jackson*, 578 So. 2d at 699; *State v. Boiardo* (1980), 82 N.J. 446, 449-50, 462-63, 414 A.2d 14, 16, 22-23). Further, some courts that have used the word "means" have either misstated a prior case that used the word "sources" (see, *e.g., United States v. Cuthbertson* (3d Cir. 1981), 651 F.2d 189, 195-96, citing *Criden*, 633 F.2d at 358-59) or have been reversed by a higher court using the term "sources" (compare *Kridos v. Vinskus* (Fla. Dist. Ct. App. 1985), 483 So. 2d 727, 729 (employing the term "alternative means" in exhaustion element), with *Jackson*, 578 So. 2d at 699 (employing the word "sources")). Moreover, the Illinois statute uses the word "sources" and not "means." (See Ill. Rev. Stat. 1989, ch. 110, par. 8—907(2).) We do not think this choice of words was inadvertent. Accordingly, we hold that "sources of information," as used in section 8—907(2) of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 8—907(2)), means specific persons or things that can themselves provide the sought-after testimony or evidence.

We view the circumstances of the present case more like those in *Carey* than *Warden, Green, Zerilli,* or *Clampitt.* In *Carey*, the appellee (petitioner) and appellant (defendant) could not identify the alternative sources involved, while, in the other four cases, the courts could name other witnesses that the petitioner could have interviewed or subpoenaed in lieu of compelling the reporter to speak. Accordingly, *Carey* held that the appellee (petitioner) had exhausted all alternative sources, while *Warden, Green, Zerilli,* and *Clampitt* held that the petitioner had not.

The Illinois reporter's privilege reflects this distinction. Section 8—907(2) of the Code requires the petitioner to prove that it has exhausted "all other *available sources*." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 110, par. 8—907(2).) Consistent with the authority from other jurisdictions discussed above, we hold that "available sources" in section 8—907(2) means those sources that are identified or known, or those sources that are *likely* to become identified or known as a result of a thorough and comprehensive investigation.

■ In the present case, the State appears to have contacted all available sources. This record suggests that the police have conducted a thorough and comprehensive investigation, and the only things the State knows about defendant's sources are that some of them might live in Springfield and none of them will talk to the police.

We emphasize that the legislature did not intend to compel reporters to become investigators for the State or anyone else. Accordingly, in order to satisfy the "exhaust all other available sources" requirement of section 8—907(2) of the Code, a petitioner must satisfy the court that its investigation has been sufficiently thorough and comprehensive that further efforts to obtain the sought-after information would not likely be successful. It is *not* sufficient investigation for the State to merely assert that its investigation has not revealed the information sought. See *Zerilli*, 656 F.2d at 715.

In the present case, we are concerned about the sufficiency of the record to support the trial court's finding that the State has exhausted all other available sources. In particular, the trial court took judicial notice of only the *quantity* of discovery material that the State's murder investigation produced. For reasons we do not understand, the trial court specifically chose to not consider the *contents* of any of the 12,000 to 15,000 pages of discovery to assess for itself how thorough and comprehensive the State's investigation has been.

We sympathize with the trial court as it tried to resolve the issues presented by the State's divestiture petition in the absence of any Illinois authority specifically addressing the issues we have addressed in this opinion. However, given the guidelines we have now provided for trial courts as they decide such petitions, and further given the serious public policy considerations which underlie the reporter's privilege, we conclude that the court's divestiture order in this case should be vacated and the cause remanded for further proceedings on the State's petition. Doing so will give the trial court the opportunity to further consider the exhaustion issue of section 8—907(2) of the Code in light of this opinion. Ill. Rev. Stat. 1989, ch. 110, par. 8—907(2).

On remand, we are directing the trial court to consider the discovery material the State has filed in the murder prosecutions. We deem these materials relevant to the court's resolution of the exhaustion issue. If the trial judge believes that reviewing these materials would affect his ability to preside at the murder trial to which he has been assigned, then some other judge should preside over either the murder case or this case on remand.

Katz's testimony provided a brief, general overview of the State's entire investigation into these crimes, but he did not provide any de-

tails of his or any other police officer's investigation into the identity of the unknown witnesses and whether those witnesses will cooperate with the State when asked directly to do so. On remand, we would expect this point to be more fully explored.

Because the legislature intended divestiture of a reporter's privilege to be the last resort to get the sought-after information, the petitioner seeking divestiture must prove compliance with the statutory requirements by a preponderance of the evidence. We acknowledge that with regard to the issue of exhaustion, this burden amounts to requiring the petitioner to prove a negative. Nonetheless, that is the burden the legislature imposed.

■ Finally, we note that the trial court divested defendant of his reporter's privilege regarding "any and all information" defendant holds regarding the S & S triple-murder case. However, the evidence at the divestiture hearing focused primarily on the necessity of divesting defendant of his reporter's privilege with regard to the witness to whom the uncharged suspect had admitted his participation in the S & S case.

When divesting a reporter of his privilege, the court should narrowly tailor the order to require production of only that information for which the petitioner (here, the State) has met all the statutory prerequisites as discussed herein. (See Ill. Rev. Stat. 1989, ch. 110, par. 8—907.) If an issue arises as to the appropriate scope of a divestiture order, the trial court should conduct an *in camera* inspection of the material in question before directing it to be produced to the petitioner. The trial court should scrutinize the material *in camera* to ensure that its production does not violate the protections the legislature intended to provide reporters.

For the reasons stated, we vacate the circuit court's divestiture order, reverse defendant's finding of contempt that was based upon his violation of that order, and remand for further proceedings on the State's petition for divestiture, consistent with the views expressed herein.

Vacated and remanded with instructions.

LUND, J., concurs.

JUSTICE McCULLOUGH, dissenting:

Considering the burden of proof required of the State, preponderance of the evidence, and the standard of review that adheres, *i.e.*,

we will not reverse unless the trial court's findings are against the manifest weight of the evidence, the trial court should be affirmed.

It is readily apparent to this court and the parties agree that the "disclosure of the information sought is essential to the protection of the public interest." (Ill. Rev. Stat. 1989, ch. 110, par. 8—907(2).) As the majority points out, the only issue on appeal is whether the State met its burden under the statute "that all other available sources of information have been exhausted." Ill. Rev. Stat. 1989, ch. 110, par. 8—907(2).

*Warden* does give us the necessary guidance to decide this appeal. In *Warden*, the supreme court dealt specifically with the provisions of section 8—907 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 8—907). With respect to the provision "that all other available sources of information have been exhausted" (Ill. Rev. Stat. 1989, ch. 110, par. 8—907(2)), the supreme court stated:

> "[E]very jurisdiction which has recognized a qualified reporter's privilege has also required a showing, prior to divestiture, that other sources of information have been exhausted. [Citations.] The extent to which these alternatives must be pursued, however, is not entirely clear, and that question presents the courts with perhaps the most difficult problems in this area.
>
> The controlling standard has not been defined uniformly. Depending on the jurisdiction, it must be established that: 'reasonable efforts' have been made to obtain the information elsewhere [citations]; proof by a preponderance of the evidence establishes the unavailability of less intrusive sources [citation]; the 'only practical access to crucial information *** is through the newsman's sources' [citation]; 'possible alternative sources' have not been exhausted [citation]; 'reasonably available alternative sources' have been exhausted [citations]; 'the party seeking the information has unsuccessfully attempted to obtain other sources less chilling of the First Amendment freedoms' [citation]; 'the litigant has exhausted all other means of obtaining the information' [citation]; the party has 'attempted to obtain the information from other sources' [citation]; the material sought is not 'available from a nonjournalistic source' [citation]; or that the information 'is unavailable from any other source' [citation].
> ***
> While the phrase 'available source' is not easily defined, section 8—906 of the Code directs the court, in granting or

denying divestiture, to consider 'the adequacy of the remedy otherwise available, if any, the relevancy of the source, and the possibility of establishing by other means that which it is alleged the source requested will tend to prove' [citation]. In our judgment, these provisions, when read with section 8–907, reflect a clear legislative intent to create a standard which balances the reporter's first amendment rights against the public interest in the information sought and the practical difficulties in obtaining the information elsewhere. Thus, the extent to which an investigation must be carried before the reporter's privilege should be divested cannot be reduced to any precise formula or definition but must, in view of the competing interests involved, depend on the facts and circumstances of the particular case." (*Warden*, 104 Ill. 2d at 425-27, 472 N.E.2d at 453-54.)

In *Warden*, Justice Underwood quoted the specially concurring opinion of Justice Powell in *Branzburg*, stating:

" 'The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions.' " (*Warden*, 104 Ill. 2d at 427-28, 472 N.E.2d at 454, quoting *Branzburg*, 408 U.S. at 710, 33 L. Ed. 2d at 656, 92 S. Ct. at 2671 (Powell, J., concurring).)

*Warden* then states:

"We think it clear that the statute requires more than a showing of inconvenience to the investigator before a reporter can be compelled to disclose his sources ***." *Warden*, 104 Ill. 2d at 428-29, 472 N.E.2d at 454.

In this case, we need to strike a balance between freedom of the press and the obligation of a citizen to give relevant testimony with respect to criminal conduct. The strong public interest and the practical difficulties that have been met in this investigation mandate disclosure.

The majority opinion herein states:

"In the present case, the State appears to have contacted all available sources. This record suggests that the police have conducted a thorough and comprehensive investigation, and the only things the State knows about defendant's sources are that some of them might live in Springfield and

none of them will talk to the police." (226 Ill. App. 3d at 861.)

I see no useful purpose to give publicity to criminal acts based upon a privilege and not require disclosure to the prosecution, especially where authorities have made an effort, as the majority points out, to investigate and determine witnesses to this serious case.

In my view, the civil cases cited by the majority lend little weight and credence to this case. Public interest in civil cases is certainly different than that inherent in serious criminal cases such as this; in the latter circumstance, the public interest becomes more important.

Additionally, as pointed out by the majority, intensive investigation has consumed more than 2,000 hours of investigators' time and the State had garnered sufficient evidence to charge two suspects with the crimes. The evidence presented to the trial court more than adequately satisfies the requirement that the State prove by a preponderance of the evidence that it has exhausted "all other available sources of information" (Ill. Rev. Stat. 1989, ch. 110, par. 8—907(2)) as defined in *Warden*.

Applying Justice Stewart's test stated in *Branzburg*, there is probable cause to believe the defendant has information clearly relevant to a specific violation of law, there is a compelling and overriding interest in the information, and the information cannot be obtained by alternative means less destructive of first amendment rights. *Branzburg*, 408 U.S. at 743, 33 L. Ed. 2d at 676, 92 S. Ct. at 2681 (Stewart, J., dissenting).

The trial court's decision is not against the manifest weight of the evidence. I agree that the scope of the trial court's order needs to be tailored. The order should be restricted specifically to matters concerning confessions or admissions of individuals involved in the commission of the offense or in aiding or abetting the commission of the offense.