Docket No. 87260–Agenda 39–September 1999.

THE PEOPLE OF THE STATE OF ILLINOIS 
et al
., Appellees, v. GEORGE PAWLACZYK 
et al
., Appellants.

Opinion filed January 21, 2000.

JUSTICE McMORROW delivered the opinion of the court:

The circuit court of St. Clair County appointed a special prosecutor to investigate whether two officials from the City of Belleville perjured themselves in depositions given in a civil suit entitled Hurst v. Viacom Broadcasting of Missouri, Inc., No. 96–L–103. The perjury allegedly occurred when the officials denied, under oath, that they furnished information concerning a criminal investigation to defendants George Pawlaczyk and Marilyn Vise, newspaper reporters employed by the Belleville News-Democrat.

 In response to subpoenas issued by a special grand jury for their testimony, Pawlaczyk and Vise asserted the “reporter’s privilege,” codified in article VIII, part 9, of the Code of Civil Procedure (Reporter’s Privilege Act or Act) (735 ILCS 5/8–901 
et seq
. (West 1998)), and refused to reveal whether the City of Belleville officials were defendants’ sources for stories published in the newspaper. The special prosecutor initiated a separate proceeding in equity to divest defendants of their reporter’s privilege. 735 ILCS 5/8–903 (West 1998); People v. Pawlaczyk, No. 97–MR–148; People v. Vise, No. 97–MR–149. The circuit court ordered Pawlaczyk and Vise to respond to the special prosecutor’s questions concerning the City of Belleville officials. The appellate court affirmed. No. 5–98–0005 (unpublished order under Supreme Court Rule 23). Before this court, Pawlaczyk and Vise request that we reverse the circuit court’s orders.

BACKGROUND

On October 18, 1995, Lori Nolen contacted the Belleville police department and reported that she had been the victim of a sexual assault. On November 29, 1995, KMOV-TV, Channel 4, a television station that broadcasts in the Belleville area, reported that Nolen had identified Robert Hurst, a former chief of the Belleville police department, as her attacker. The day after, on November 30, 1995, the Belleville News-Democrat published a story with the headline “Hurst Quizzed in Rape.” Defendant George Pawlaczyk wrote the article, which stated in pertinent part that KMOV-TV had reported that Hurst was a suspect in the rape of Lori Nolen. Subsequent article or articles repeated the same allegations.

No criminal charges were ever filed against Hurst. Results of DNA and polygraph tests, as well as witness interviews, prompted the Madison County State’s Attorney to clear Hurst as a suspect in the Nolen case.

On February 13, 1996, Hurst filed suit in the circuit court of Madison County, against Viacom Broadcasting of Missouri, Inc., d/b/a KMOV-TV, Channel 4; Mary Phelan, an employee of Channel 4; Capital Cities Media, d/b/a the Belleville News-Democrat; Pawlaczyk; Lori Nolen; and Greg Edwards, an editor for the News-Democrat. Hurst v. Viacom Broadcasting of Missouri, Inc., No. 96–L–103. Hurst’s claims sounded in libel, slander, and the tort of false light. As finally amended,
(footnote: 1) the complaint also named as defendants Roger Cook, mayor of Belleville; James Brede, the president of the Belleville board of police and fire commissioners; and Gary Berkley, publisher of the Belleville News-Democrat. Hurst dropped Greg Edwards from the lawsuit. Further, Hurst’s last amended pleading replaced Hurst’s initial claims with allegations of: a civil conspiracy “to deprive plaintiff of his constitutional right to privacy”; invasion of privacy; defamation; and intentional infliction of emotional distress.

In the course of discovery conducted in the Hurst lawsuit, Hurst deposed Belleville Mayor Roger Cook. Cook testified that he spoke to no one “from any media source” about Hurst’s identity as a suspect until after November 30, 1995, when the Belleville News-Democrat first printed the “Hurst Quizzed in Rape” story. Cook testified that he never commented about the Nolen incident to Vise; Cook asserted that he did not talk to any reporter for the newspaper about the Nolen case until “after it was already in the media.”

Hurst also deposed Vise in the Hurst case. In pertinent part, Vise averred that, as a reporter for the Belleville News-Democrat in the autumn of 1995, she learned from another reporter for the News-Democrat, Doug Moore, that Hurst had been named by Nolen as Nolen’s attacker. Vise stated that she later confirmed this information with another source. She refused to disclose the identity of the other source, asserting the privilege granted to reporters under the Reporter’s Privilege Act (735 ILCS 5/8–901 
et
 
seq
. (West 1998)). She would confirm, however, that she talked to the source between November 14 and November 23, 1995, that the source was either a police officer, someone with connections to the police department, or someone that the police department “communicates with.” Because she left the paper temporarily on medical leave, she did not write a story identifying the source, but she did share the information with the “editorial staff” before her departure. She said too that the source was not James Brede.

Hurst deposed James Brede of the Belleville board of police and fire commissioners on March 25, 1996. Brede denied being a source for the Belleville News-Democrat for the stories regarding Hurst. Further, Brede maintained that he never discussed Hurst’s status as a suspect with David Bauer, the chief of police for Belleville, Michael Boyne, a Belleville police officer, or any other member of the Belleville police department.

When Hurst deposed Pawlaczyk, Pawlaczyk testified that he was first assigned to cover the Nolen matter for the newspaper on November 28, 1995. Prior to that date, he had heard rumors around Belleville that Hurst had been named as a suspect. On November 28, after his assignment as a reporter, Pawlaczyk confirmed these rumors by talking to other sources. Pawlaczyk said his primary source for the November 30 story was the November 29 account that appeared on KMOV-TV. Excluding KMOV-TV, Pawlaczyk said, he considered his other sources for the story to be reliable. Pawlaczyk refused to state how many sources he had, and refused to state whether his sources included Roger Cook or James Brede.

On Hurst’s motion, the circuit court divested Pawlaczyk and Vise of their reporters’ privilege (735 ILCS 5/8–903, 8–907 (West 1998)), and ordered them to reveal the names of the sources that told them that Hurst was suspected of raping Nolen. The court ordered Vise to divulge whether her source was Roger Cook. Vise did not seek leave to appeal the circuit court’s order, which was entered on November 7, 1996. Instead, by affidavit filed November 20, 1996, Vise answered the circuit court’s query in the affirmative.

In addition, the circuit court ordered Pawlaczyk to reveal whether, “prior to publication of the offending article on November 30, 1995, defendant Brede discussed with [Pawlaczyk] the alleged fact that Ms. Nolen had identified plaintiff Hurst as her attacker. If the question is answered in the negative, no further inquiry may be made regarding [Pawlaczyk’s] sources except by leave of court.” Pawlaczyk refused to answer the question in the court’s order and appealed the order, pursuant to Illinois Supreme Court Rule 308 (134 Ill. 2d R. 308).

During the pendency of Pawlaczyk’s appeal, Hurst moved to withdraw his request to divest Pawlaczyk of his reporter’s privilege. Hurst asserted that the pending appeal would delay final resolution of the issues litigated in the Hurst lawsuit. Hurst stated as well that “plaintiff’s counsel’s review of the evidence has convinced him that the issue can be resolved absent divestiture of [Pawlaczyk].” On July 11, 1997, the circuit court granted plaintiff’s motion and withdrew its order divesting Pawlaczyk of his privilege. The appellate court subsequently dismissed Pawlaczyk’s appeal.

Also, while the Hurst lawsuit was still pending in the circuit court, the St. Clair County State’s Attorney moved the circuit court for appointment of a special prosecutor to determine whether sufficient evidence existed to charge Brede and Cook with perjury. The request for appointment of a special prosecutor apparently was prompted by evidence adduced during the discovery stage of the Hurst case. Information obtained from the State’s Attorney for Madison County and from employees of the Belleville police department and the Belleville News-Democrat allegedly contradicted Brede’s and Cook’s sworn deposition testimony that they were not sources for Pawlaczyk and Vise.

On December 17, 1996, the circuit court of St. Clair County appointed attorney Richard Sturgeon as a special prosecutor to “investigate and prosecute if warranted, alleged criminal conduct on the part of Roger Cook, Mayor of Belleville, and James Brede, Commissioner for the City of Belleville.” A grand jury convened to investigate the perjury allegations heard testimony from, among others, Brede, Cook, Vise and Pawlaczyk. Brede’s testimony before the special grand jury differed from his deposition testimony in the Hurst case. In the Hurst case, Brede averred that he learned that Hurst was a suspect on or after November 29, 1995, the date of the “Hurst Quizzed in Rape” article. Before the grand jury, Brede stated that he first learned the information on November 27, 1995, when Pawlaczyk telephoned Brede to ask him about the allegation. However, Brede repeated his contention that he was not a source for any reporter concerning the Hurst matter.

Roger Cook testified in the grand jury proceedings that Vise was not truthful when she swore, in her affidavit, that Cook was a source that named Hurst as a suspect in the Nolen rape. Cook stated that he never gave any information regarding the case to Vise.

 Vise and Pawlaczyk asserted their reporters’ privilege before the grand jury and refused to reveal whether Cook and Brede acted as sources of information for them.

On March 27, 1999, the special prosecutor filed two “Complaints for Divestiture of Reporter’s Privilege and to Compel the Answering of Non-Privilege [
sic
] Questions” with the circuit court of St. Clair County. People v. Pawlaczyk, No. 97–MR–148; People v. Vise, No. 97–MR–149; 735 ILCS 5/8–903 (West 1998). As to Vise, the special prosecutor initially alleged that the doctrine of collateral estoppel barred Vise from raising the reporter’s privilege before the special grand jury. The special prosecutor asserted too that Cook’s testimony before the grand jury was directly contradictory to statements in Vise’s affidavit filed in the Hurst lawsuit. Only by compelling Vise to answer the grand jury’s questions, the special prosecutor alleged, could the grand jury determine if sufficient evidence existed to charge Cook with perjury.

 The special prosecutor further maintained that Pawlaczyk’s testimony was vital to a determination of whether Brede perjured himself when he stated, at deposition and before the grand jury, that he was never a source for Pawlaczyk’s November 30, 1995, article, “Hurst Quizzed in Rape.” Thus, the special prosecutor requested that the circuit court divest the reporters of their privilege claimed under the Act. The special prosecutor also asked the circuit court to order Vise and Pawlaczyk to answer all questions “pertaining to issues relating to whether” Cook and Brede were sources of information concerning Hurst’s status as a suspect in a rape case and, if so, what information they gave to the journalists and when they gave it.

Following a hearing, the circuit court entered orders on December 3, 1997, compelling Vise and Pawlaczyk to answer whether Cook and Brede were, respectively, sources for the reporters. If they answered in the affirmative, then the reporters were ordered to indicate the information given to them by these individuals and when it was given. The circuit court further found that Vise was collaterally estopped from asserting the reporter’s privilege, since she had filed an affidavit in the Hurst case affirming that Cook was a source of information for her, and because she never appealed that order.

 Vise and Pawlaczyk appealed the circuit court’s orders. In an unpublished order, the appellate court consolidated the appeals and affirmed the circuit court’s orders, with one justice dissenting. No. 5–98–0005 (unpublished order under Supreme Court Rule 23). The majority opinion agreed that the doctrine of collateral estoppel barred Vise from reasserting the reporter’s privilege. The majority agreed too that the special prosecutor satisfied the test articulated in the Act for divestiture of the privilege. In dissent, Justice Kuehn asserted that the special prosecutor failed to meet one of the elements of the statutory test, namely, that the privileged information was relevant to the perjury allegations under investigation by the special grand jury. We granted leave to appeal pursuant to Supreme Court Rule 315 (177 Ill. 2d R. 315).

ANALYSIS

A. Whether This Court Has Jurisdiction to Dispose of Defendants’ Appeal

As an initial matter, we must determine whether jurisdiction for defendants’ appeal properly lies in this court. 
A.O. Smith Corp. v. Industrial Comm’n
, 109 Ill. 2d 52, 54 (1985). In their brief, defendants contend that the court’s jurisdiction derives from Supreme Court Rules 302(b) and 315 (134 Ill. 2d R. 302(b); 177 Ill. 2d R. 315). Defendants’ jurisdictional statement is incorrect. Rule 302(b) permits this court to directly transfer an appeal pending in the appellate court to the supreme court, when “the public interest requires prompt adjudication” of the matter. 134 Ill. 2d R. 302(b). No order was entered in this case predicated on Rule 302(b). Neither party applied for a Rule 302(b) transfer and, in fact, the appellate court disposed of this case on the merits, an eventuality not contemplated by the transfer mechanism described in Rule 302(b) (134 Ill. 2d R. 302(b)).

Further, Rule 315 merely sets forth the criteria that must be met in order to file a petition for leave to appeal to this court. 177 Ill. 2d R. 315. It is not one of the rules of court that confers jurisdiction on a final order or on an interlocutory, but appealable, order. See 
People ex rel. Scott v. Silverstein
, 87 Ill. 2d 167, 171 (1981). Thus, the grounds stated by defendants for this court’s alleged jurisdiction are inadequate.

Unless we conclude that defendants have appealed from a final order (see 155 Ill. 2d Rs. 301, 304), or from an interlocutory order expressly made appealable by supreme court rules (see 166 Ill. 2d Rs. 306, 307; 155 Ill. 2d R. 308), then we must dismiss defendants’ appeal. 
Silverstein
, 87 Ill. 2d at 174. A final order is one which “determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment.” 
Silverstein
, 87 Ill. 2d at 171; see also 
Flores v. Dugan
, 91 Ill. 2d 108, 112 (1982).

At bar, Vise and Pawlaczyk appeal from orders entered in two chancery actions: People v. Pawlaczyk, 97–MR–148, and People v. Vise, 97–MR–149. The special prosecutor initiated these actions, pursuant to the Act, for the specific purpose of divesting the reporters of the privilege created by the Act (735 ILCS 5/8–903(a) (West 1998)). Thus, the culmination of these proceedings would be either the grant or the denial of the relief requested by the special prosecutor. The orders from which defendants appeal, entered December 3, 1997, divested Pawlaczyk and Vise of the privilege. Because the Pawlaczyk and Vise cases were initiated for the limited purpose of divesting defendants of their reporters’ privilege, nothing remains to be done in the proceedings except to execute the judgment of the trial court, namely, that defendants finally respond to the grand jury’s inquiries. 
Cf.
 
Silverstein
, 87 Ill. 2d at 172. Therefore, the circuit court’s orders are final and appealable orders. 134 Ill. 2d R. 301. This court possesses the necessary jurisdiction to decide defendants’ appeal.

B. The Illinois Reporter’s Privilege Act

Illinois allows a qualified privilege of confidentiality for any source of information obtained by a reporter. 735 ILCS 5/8–901 (West 1998). “The reporter’s privilege has evolved from a common law recognition that the compelled disclosure of a reporter’s sources could compromise the news media’s first amendment right to freely gather and disseminate information.” 
In re Special Grand Jury Investigation of Alleged Violation of the Juvenile Court Act
, 104 Ill. 2d 419, 424 (1984). The purpose of the privilege is to assure reporters access to information, thereby encouraging a free press and a well-informed citizenry. 
Cukier v. American Medical Ass’n
, 259 Ill. App. 3d 159, 163 (1994); 
In re Subpoena Duces Tecum to Arya
, 226 Ill. App. 3d 848, 852 (1992); see also Comment, 
Just Between You and Me ... For Now: Reexamining a Qualified Privilege for Reporters to Keep Sources Confidential in Grand Jury Proceedings
, 1988 U. Ill. L. Rev. 739; D. Geraghty & A. Raphael, 
Reporter’s Privilege and Juvenile Anonymity: Two Confidentiality
 
Policies on a Collision Course
, 16 Loy. U. Chi. L.J. 43, 52 n.51 (1984) (hereinafter, 
Reporter’s Privilege
) (quoting Illinois Governor Richard Ogilvie, “ ‘[The Act] assures a better informed public, for it allows reporters to seek the truth wherever it is to be found, without the fear that their sources will be cut off by unnecessary disclosure’ ”).

A reporter may be divested of the privilege only by the successful completion of a multistep process delineated in the Act. 735 ILCS 5/8–903 through 8–907 (West 1998). A party seeking divestiture of the privilege must identify, in pertinent part, the specific information sought, its “relevancy to the proceedings,” and that a specific public interest would be adversely affected if the factual information sought were not disclosed. 735 ILCS 5/8–904 (West 1998). The applicant must also prove, by a preponderance of the evidence (735 ILCS 5/8–905 (West 1998); 
Arya
, 226 Ill. App. 3d at 854), that no state or federal secrets are compromised by disclosure of the information requested, that all other available sources of information have been exhausted and that disclosure of the information is essential to the protection of the public interest involved. 735 ILCS 5/8–907 (West 1998). Further, the Act directs that, in granting or denying the application for divestiture, the circuit court shall consider the nature of the proceedings, the merits of the claim or defense, the adequacy of remedies otherwise available, if any, the relevancy of the source, and whether alternative means of proof are available. 735 ILCS 5/8–906 (West 1998).

We will disturb the lower court’s findings under the statute only if they are against the manifest weight of the evidence. See 
Lawson v. G.D. Searle & Co.
, 64 Ill. 2d 543, 553 (1976).

1. 
Whether Defendant Marilyn Vise Is Collaterally Estopped From Raising the Reporter’s Privilege

Vise asserts that the circuit court erred in ruling that Vise was collaterally estopped from asserting her reporter’s privilege before the special grand jury. The special prosecutor responds that, because the circuit court in the Hurst case divested Vise of her privilege, and because Vise failed to appeal the Hurst order of divestiture, Vise cannot relitigate the identical issue during the special grand jury investigation.

The doctrine of collateral estoppel bars a party from relitigating an issue decided in a prior proceeding. 
Talarico v. Dunlap
, 177 Ill. 2d 185, 191 (1997); 
Herzog v. Lexington Township
, 167 Ill. 2d 288, 294 (1995). The doctrine is intended to “promote[] fairness and judicial economy by preventing relitigation in one suit of an identical issue already resolved against the party against whom the bar is sought.” 
Kessinger v. Grefco, Inc.
, 173 Ill. 2d 447, 460 (1996). A party is collaterally estopped from litigating an issue when “(1) the issue decided in the prior litigation is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.” 
Talarico
, 177 Ill. 2d at 191; 
Herzog
, 167 Ill. 2d at 295. For the doctrine to apply, the court must be assured that the party to be estopped previously had a “full and fair opportunity to litigate the issue.”
 Vroegh v. J&M
 
Forklift
, 165 Ill. 2d 523, 532 (1995). The court must also be assured that the party estopped suffers no unfairness as a result of its enforcement.
 Talarico
, 177 Ill. 2d at 191–92. The decision to apply the doctrine of collateral estoppel is entrusted to the circuit court’s sound discretion, and will not be reversed absent a misapplication of that discretion. See 
Cleveringa v. J.I. Case Co.
, 230 Ill. App. 3d 831, 848 (1992).

 Vise insists that estoppel is inappropriate because the issues litigated in the grand jury proceedings and in the Hurst lawsuit are not identical. 
Talarico
, 177 Ill. 2d at 191. The original complaint in the Hurst case attempted to state a cause of action for libel, slander and false light. The present appeal arises from a grand jury investigation into whether Cook and Brede committed perjury.

Vise is correct. As Vise points out, the test for divestiture under the Act varies slightly when the divestiture proceedings arise in the course of a lawsuit for libel or slander, as opposed to when the divestiture request arises in other actions. The chief difference lies in the proof the movant must adduce concerning any “public interest” at stake in the proceedings. A court granting divestiture in a libel/slander action must be convinced that the public’s “need for disclosure of the information sought outweighs the public interest in protecting the confidentiality of sources of information used by a reporter.” 735 ILCS 5/8–907(2) (West 1998). In all other cases, the movant must demonstrate that “disclosure of the information sought is essential to the protection of the public interest involved.” 735 ILCS 8–907(2) (West 1998). Elsewhere, the Act directs a party seeking divestiture in a libel/slander case to make certain 
prima
 
facie
 showings relevant to the alleged defamation, and to demonstrate the necessity for disclosure of the privileged information. 735 ILCS 5/8–904 (West 1998). Such showings are required only in cases in which defamation is an underlying claim. 735 ILCS 5/8–904 (West 1998).

Another difference lies in the application of the “relevance” prong of the statutory divestiture test. Section 8–904 obligates the party seeking divestiture to demonstrate the relevancy of the privileged information to the “proceedings.” 735 ILCS 5/8–904 (West 1998). Thus, in the Hurst case, the Act required Hurst to show how the identity of Vise’s source was relevant to Hurst’s lawsuit for libel, perjury and false light. Because the special prosecutor filed the complaint in the Vise case pursuant to a special grand jury investigation into perjury, however, the inquiry becomes, “How is the identity of Vise’s source relevant to prove whether Cook or Brede perjured themselves?” As a result, the processes of divestiture in the Hurst and Vise lawsuits necessarily involve analyses of different causes of action and issues, precluding application of the collateral estoppel doctrine.

 In this case, estoppel is also inappropriate because the record on appeal contains little to indicate exactly what arguments were put forth in the Hurst lawsuit regarding divestiture of Vise’s privilege and what facts and standards the Hurst court considered in divesting Vise of the privilege. Unless it can be shown with “clarity and certainty” that the identical question was decided in an earlier proceeding, collateral estoppel is improper. 
St. Paul Fire & Marine Insurance Co. v. Lefton Iron & Metal Co.
, 296 Ill. App. 3d 475, 487 (1998); 
Hexacomb Corp. v. Corrugated Systems, Inc.
, 287 Ill. App. 3d 623, 631 (1997). As this court stated in 
Kessinger
, 173 Ill. 2d at 467, “[a]pplication of the doctrine of collateral estoppel must be narrowly tailored to fit the precise facts and issues that were clearly determined in the prior judgment.”

Accordingly, we find that the circuit court erred by finding Vise collaterally estopped from reasserting her reporter’s privilege. Further, because we have determined that the special prosecutor failed to satisfy one of the necessary elements of the collateral estoppel doctrine, we need not address the remaining arguments Vise raised in opposition to estoppel.

 In light of our holding as to Vise, moreover, we will proceed to review the propriety of the orders of divestiture entered by the circuit court as to Vise and Pawlaczyk. There is no prejudice to Vise if we do not remand her cause to the circuit court to determine if Vise should be divested of her reporter’s privilege. In fact, the circuit court in the Vise case made all of the findings prescribed by the Act for an order of divestiture. The pleadings and transcripts of record indicate that the special prosecutor raised the estoppel argument against Vise in the alternative, so that the question of whether Vise should be stripped of her reporter’s privilege was joined and litigated by the special prosecutor and Vise. Also, the circuit court in the Vise case applied the statutory test for divestiture to Vise and found divestiture proper. Thus, we conclude that any facts or issues regarding divestiture that Vise and the special prosecutor would relitigate on remand have already been adequately addressed before the circuit court.

2. 
Whether the Circuit Court’s Decision to Divest Pawlaczyk and Vise of Their Reporters’ Privilege Was Against the Manifest Weight of the Evidence

On appeal, defendants challenge the circuit court’s findings as to two factors in the multistep process to divest reporters of their statutory privilege. Defendants allege that, contrary to the circuit court’s ruling, the privileged information was not relevant to the grand jury investigation to determine whether Brede and Cook committed perjury. 735 ILCS 5/8–904, 8–906 (West 1998). Defendants assert as well that the circuit court improperly concluded that disclosure was “essential” to the “public interest involved.” 735 ILCS 5/8–904, 8–907 (West 1998).

a. Whether the Special Prosecutor Demonstrated the Relevancy of the Privileged Information to the Grand Jury Proceedings

Defendants maintain that the special prosecutor did not adequately demonstrate the relevancy of the sources’ identities to the proceedings in which the information was sought. 735 ILCS 5/8–904 (West 1998). In support of this contention, defendants first observe that, in order for a person to be convicted of perjury, the State must prove, 
inter alia
, that the allegedly false statement was “material” to the proceeding in which the statement was uttered. Defendants urge that Brede and Cook cannot be convicted of perjury because, when Brede and Cook made the allegedly perjurious statements in the Hurst case, the statements were not “material” to the underlying lawsuit for libel, slander or false light. From this premise, defendants then seem to conclude that, because Brede and Cook cannot be convicted of perjury, then there is no need to know whether Brede and Cook gave false testimony. In other words, the identity of the reporters’ sources is not “relevant” to the “proceedings.”

We disagree. We think defendants’ argument misconstrues the meaning of both “proceedings” and “relevancy” in section 8–904. Section 8–904 requires only a showing that the information requested is “relevan[t] to the proceedings.” 735 ILCS 5/8–904 (West 1998). Section 8–903(a) of the Act, in turn, defines the “proceeding[s]” in which the relevancy must be proved. 735 ILCS 5/8–903(a) (West 1998). Pursuant to section 8–903(a), the application for divestiture shall be filed in the circuit court serving the county hearing “the *** proceeding in which the information is sought.” 735 ILCS 5/8–903(a) (West 1998).

In this case, the application for divestiture arose from Vise’s and Pawlaczyk’s refusal to identify their sources before a special grand jury investigating allegations of perjury against Brede and Cook. Therefore, the “proceedings” that define the scope of our relevancy inquiry are the special grand jury proceedings.

Furthermore, a fact is “relevant” if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. 
People v. Monroe
, 66 Ill. 2d 317, 321-22 (1977), quoting Fed. R. Evid. 401; see also 
People v. Boclair
, 129 Ill. 2d 458, 477 (1989). The “fact[s] of consequence,” or “proposition[s]” (M. Graham, Cleary & Graham’s Handbook of Illinois Evidence §401.1, at 132 (6th ed. 1994)), relevant to a perjury charge are whether under oath “or affirmation” in any matter in which the oath or affirmation is required an individual makes a false statement material to the issue in question and the person knows the statement to be untrue. 720 ILCS 5/32–2 (West 1998); 
People v. Davis
, 164 Ill. 2d 309, 310 (1995). Thus, if the privileged information will make any one of the elements of perjury more or less probable, then it is relevant “to the proceedings.”

In the present appeal, the identity of defendants’ source or sources is directly relevant to an element of the perjury charge. Brede and Cook have stated under oath that they did not speak to Pawlaczyk or Vise about Hurst before the story “Hurst Quizzed in Rape” appeared in the newspaper. However, the testimony of several witnesses appearing before the special grand jury was directly contrary to the deposition testimony of Brede and Cook, calling the veracity of Brede and Cook into question. As a consequence, only the individuals allegedly on the receiving end of the officials’ disclosures (
i.e
., Pawlaczyk and Vise) can definitively say when Brede and Cook talked to them and what their conversations entailed. Indeed, Pawlaczyk admitted before the grand jury that only Pawlaczyk knows for sure whether Brede has testified truthfully or falsely under oath concerning his interactions with Pawlaczyk. Therefore, the identity of Pawlaczyk’s and Vise’s sources is relevant to the allegation that Brede and Cook testified falsely under oath.

We agree with defendants that, in order to convict Brede and Cook of perjury, the State would ultimately have to prove more than just a false statement made under oath. 720 ILCS 5/32–2 (West 1998). The State must also demonstrate the materiality of the supposedly perjurious statement or statements to the claims alleged in the Hurst case. 
Davis
, 164 Ill. 2d at 311-12. However, whether the State can prove that element of a perjury charge is not dispositive of this court’s inquiry in the instant matter. It is sufficient if the privileged material is relevant to a “fact of consequence” to the perjury allegations. By its materiality to the question of whether Brede and Cook testified truthfully or falsely at deposition, the privileged information is relevant to a fact of consequence in the “proceedings” in which the proposition arose.

Decisions from other jurisdictions construing statutory and common law reporter’s privileges support our interpretation of the Act. See 
Davis v. Glanton
, 705 A.2d 879, 885 (Pa. Super. 1997) (disclosure of privileged source materials for newspaper article was proper where it was “material, relevant and necessary” to prove an element of plaintiff’s defamation claim, 
i.e
., that the published remarks referred to plaintiffs); 
State v. Sandstrom
, 224 Kan. 573, 577, 581 P.2d 812, 815 (1978) (disclosure generally required in criminal cases where privileged information is material to prove an element of the offense or to prove a defense asserted by defendant); 
Brown v. Commonwealth
, 214 Va. 755, 758, 204 S.E.2d 429, 431 (1974) (criminal defendant’s sixth amendment right to identify witnesses would prevail over reporter’s claim of privilege, provided defendant could show that privileged information was, 
inter alia
, “material to proof of any element of a criminal offense, or to proof of the defense asserted by the defendant”).

We also reject defendants’ assertion that divestiture requires proof that the privileged facts are “critically relevant” to the proceedings at issue. By its terms, the Act only requires proof that the privileged information is “relevan[t]” to the proceedings in which they are sought. 735 ILCS 5/8–904 (West 1998). Nowhere does the Act demand evidence of “critical” relevancy. Applying the statute according to the plain and ordinary meaning of its terms (
People v. Woodard
, 175 Ill. 2d 435, 443 (1997)), we hold that a showing of “relevancy” is sufficient to meet that prong of the statutory test for divestiture.

b. Whether the Special Prosecutor Demonstrated an Essential Public Interest Necessitating Disclosure of the Privileged Information

Defendants assert next that the circuit court inappropriately found that disclosure of the sources’ identities was “essential to the public interest involved.” 735 ILCS 5/8–907(2) (West 1998). The circuit court determined that divestiture was essential to the public’s interest in the special grand jury investigation concerning the purported perjury at the Brede and Cook depositions. The fact that perjury is a felony in Illinois seemed to influence the circuit court’s ruling, as well. The appellate court did not define 
per
 
se
 the public interest implicated by the motion for divestiture, but indicated that it might be “preventing perjury.” The appellate court held that the special prosecutor satisfied the burden of proof as to all necessary elements under the Act, including demonstrating that divestiture was essential to protect the public interest involved.

Defendants contend that the circuit and appellate courts erred in allowing the special prosecutor to show merely the existence of a “public interest” before divesting defendants of their privilege. Defendants insist that the Act and applicable first amendment principles demand a finding of a “compelling” public interest sufficient to override the public’s interest in a journalist’s unfettered access to confidential sources.

Again, we find that defendants’ argument inserts terms into the Act that simply do not exist. Proof of a “compelling” interest is not required by the Act. Rather, in granting a motion for divestiture, the circuit court must find that the requested disclosure is “essential to the protection of the public interest involved.” 735 ILCS 5/8–907(2) (West 1998). The “public interest involved” is a reference to section 8–904 of the Act, which prescribes the contents of the application filed by the party seeking divestiture. See 735 ILCS 5/8–904 (West 1998); 
Sternberg Dredging Co. v. Estate of Sternberg
, 10 Ill. 2d 328, 334 (1957) (to ascertain the intent animating a statute, the court must construe all provisions of the act together). Under section 8–904, the application must identify a “specific public interest which would be adversely affected” by the absence of the information sought. 735 ILCS 5/8–904 (West 1998). The statute as written, therefore, does not expressly require the party seeking divestiture to show that the interest is “compelling.”

Defendants also assert that, in order to satisfy the “baseline protections” guaranteed by the first amendment, we must interpret the Act as requiring a finding of a “compelling public interest.” According to defendants, constitutional jurisprudence demands a showing of a “compelling” interest before a reporter can lawfully be stripped of his reporter’s privilege.

The court need not reach this question. Whether the Act should or should not be interpreted to require a 
compelling
 public interest is immaterial to the disposition of this case, since the Unites States Supreme Court has already determined that grand jury proceedings constitute a “compelling interest” that outweighs the public’s interest in the reporter-source privilege. In 
Branzburg
 
v
. 
Hayes
, 408 U.S. 665, 33 L. Ed. 2d 626, 92 S. Ct. 2646 (1972), the Supreme Court consolidated three appeals brought by journalists who had been subpoenaed to testify before grand juries investigating crimes that the journalists had personally witnessed. The authorities requested each journalist to disclose, 
inter
 
alia
, sources that furnished information for the reporters’ news accounts published or broadcast in the media. The reporters refused.

The precise issue before the 
Branzburg
 Court was whether reporters were obliged to respond to grand jury subpoenas “as other citizens do” and to answer questions relevant to an investigation into the commission of crime. 
Branzburg
, 408 U.S. at 682, 33 L. Ed. 2d at 640, 92 S. Ct. at 2657. The reporters urged that a journalist’s ability to guarantee confidentiality to sources is necessary to preserve the “free flow of information protected by the First Amendment.”
 Branzburg
, 408 U.S. at 680, 33 L. Ed. 2d at 638, 92 S. Ct. at 2656. They did not claim an absolute privilege, but insisted that disclosure of confidential sources could only follow a showing by their interrogators of the relevancy of the information sought to the crime under investigation, that the information is unavailable from other sources, and that the need for the information was “sufficiently compelling” to outweigh the first amendment interests in preventing disclosure. 
Branzburg
, 408 U.S. at 680, 33 L. Ed. 2d at 638, 92 S. Ct. at 2656.

 In a plurality opinion, five members of the Court refused to recognize the privilege asserted by the reporters and instead ruled that, unless a journalist could prove that a grand jury was convened in bad faith, the journalist bore the same duty as any other citizen to respond to a grand jury subpoena. 
Branzburg
, 408 U.S. at 690, 707-08, 33 L. Ed. 2d at 644, 655, 92 S. Ct. at 2661, 2670. Significantly, the Court also stated:

“The requirements of those cases [citation] which hold that a State’s interest must be ‘compelling’ or ‘paramount’ *** are also met here. *** [T]he investigation of crime by the grand jury implements a fundamental governmental role of securing the safety of the person and property of the citizen, and it appears to us that calling reporters to give testimony in the manner and for the reasons that other citizens are called ‘bears a reasonable relationship to the achievement of the governmental purpose asserted as its justification.’ ” 
Branzburg
, 408 U.S. at 700, 33 L. Ed. 2d at 650-51, 92 S. Ct. at 2666, quoting 
Bates v. City of Little Rock
, 361 U.S. 516, 525, 4 L. Ed. 2d 480, 487, 80 S. Ct. 412, 417 (1960).

See also 
United States v. Smith
, 135 F.3d 963, 971 (5th Cir. 1998) (“
Branzburg
 will protect the press if the government attempts to harass it. Short of such harassment, the media must bear the same burden of producing evidence of criminal wrongdoing as any other citizen”).

Applying this standard to the facts before it, the 
Branzburg
 Court noted that the grand juries in question had a “necessary interest” in discouraging the crimes they were called to investigate, including drug trafficking, “violent disorders” in the community, and threats against the President. 
Branzburg
, 408 U.S. at 701, 33 L. Ed. 2d at 651, 92 S. Ct. at 2666. Based on news accounts authored or broadcast by the reporters, the grand juries subpoenaed the reporters because they likely possessed information of use to the grand juries’ investigations, thereby establishing a relationship between the information sought and a subject of “compelling” interest. 
Branzburg
, 408 U.S. at 701-02, 33 L. Ed. 2d at 651, 92 S. Ct. at 2666-67.

The instant appeal presents a factual scenario similar to 
Branzburg
. The special grand jury subpoenaed Pawlaczyk and Vise to provide evidence for a criminal investigation into the possibly felonious conduct of Belleville city officials. The information pursued by the special grand jury was whether sufficient evidence existed to charge Brede and Cook with perjury. The newspaper accounts and the reporters’ own testimony before the special grand jury and elsewhere established that Vise and Pawlaczyk possessed information pertinent to the investigations. And although defendants’ briefs imply that the grand jury investigation may be the manifestation of a political feud between Hurst, Brede and Cook, defendants do not allege that the subpoenas were issued to harass Pawlaczyk and Vise, or that the special grand jury is unlawfully convened. Hence, the compelling public interest that 
Branzburg
 found inherent in the functioning of a grand jury is present here.

CONCLUSION

For the reasons stated above, we affirm the judgment of the appellate court.

Affirmed.

FOOTNOTES
1:     
1
The record indicates that Hurst obtained leave of court to file a fifth amended complaint. However, Hurst’s last amended complaint in the record on appeal is plaintiff’s fourth amended complaint. The court relies, therefore, on the fourth amended complaint for this recitation of allegations.