NO. 4-00-0798

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff,

v.

MICHAEL SLOVER, SR., MICHAEL SLOVER, JR., and JEANETTE SLOVER,

Defendants,

and

MICHAEL SLOVER, SR., MICHAEL SLOVER, JR., and JEANETTE SLOVER,

Petitioners-Appellees and 
Cross-Appellants,

v.

THE DECATUR HERALD & REVIEW and PEGGY BELLOWS, Editor,

Respondents-Appellants and 
Cross-Appellees.

)

)

)

)

)

)))))))))))

Appeal from

Circuit Court of

Macon County

No. 00CF140

Honorable

James A. Hendrian,

Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

The State charged defendants, Michael Slover, Jr., Michael Slover, Sr., and Jeanette Slover, with the first degree murder of Karyn Slover.  Michael Slover, Jr., served a subpoena 
duces
 
tecum
 upon respondent Peggy Bellows, as editor of respondent Decatur Herald & Review (Herald).  After respondents refused to produce unpublished photographs as ordered by the trial court, the trial court cited Bellows for indirect civil contempt and sentenced her to jail, which sentence was stayed pending appeal.  Respondents appeal, claiming the photographs are protected by a reporter’s privilege.  We reverse and remand with directions.

I. BACKGROUND

In January 2000, a grand jury indicted defendants for 
first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 1996)) based on the September 1996 homicide of Karyn Slover
, and indicted Michael Slover, Jr., and Michael Slover, Sr., for concealing a homicidal death (720 ILCS 5/9-3.1(a) (West 1996)) and Michael Slover, Jr., for perjury (720 ILCS 5/32-2(a) (West 1998)) for a June 1999 false statement under oath in Slover v. Slover, No. 96-D-291 (Cir. Ct. Macon Co.).

In June 2000, counsel for Michael Slover, Jr., caused a subpoena 
duces
 
tecum
 to be issued to persons employed at eight media organizations, including Sharon Reynolds, a librarian with the Herald.  The subpoena issued to Reynolds commanded her to produce specified items in her custody, including:

"all edited and unedited, published and unpublished, broadcasted and not broadcasted, photographs and moving picture or video depictions concerning the disappearance, dismemberment, concealment and/or death of Karyn Hearn Slover, including the investigation and prosecutions relative thereto, for the period of 9/27/96 to present."

When Reynolds refused to produce unpublished photographs as ordered, Michael Slover, Jr., petitioned for a rule to show cause as to why she should not be held in contempt.  Rey­nolds objected to the subpoena, asserting a qualified reporter's privilege based on section 8-901 of the Code of Civil Procedure (Code) (735 ILCS 5/8-901 (West 1998)) and the free press guaranties in the federal constitution (U.S. Const., amend. I) and the Illinois Constitution (Ill. Const. 1970, art. I, §4).

In August 2000, the trial court held a hearing on the petition for a rule to show cause.  Counsel for Michael Slover, Jr., represented the following to the trial court.  Beginning in October 1996
, police conducted a series of search warrants at the Miracle Motors automobile dealership in Mount Zion owned by Michael Slover, Sr., and Jeanette Slover.  In executing a search warrant on March 10, 1998, police allegedly found in "burn barrels" some buttons from jeans worn by Karyn Slover at the time of her death.  Police also allegedly recovered some bone fragments from the property at that time.  Prior to that search, police brought a bone or box of meat near the property, where it was cut up for comparison purposes.  None of the photographs obtained by the defense through discovery or its independent investigation showed these activities.  Counsel for Michael Slover, Jr., also stated he wanted unpublished photographs depicting the search warrants being executed through March 10, 1998, specifically those showing burn barrels.  Defense counsel speculated about reasons why the alleged incriminating evidence could not have gone undetected for 16 months in spite of multiple police searches at the property.

Following argument, the trial court took the matter under advisement.  In August 2000, the trial court found the unpublished photographs were not privileged and found Reynolds in indirect civil contempt for refusing to deliver all unpublished photographs concerning the murder investigation.  The trial court allowed Reynolds to "purge herself of the contempt finding by delivering all referenced photographs to the [c]ourt for an 
in
 
camera
 review to determine the existence of any photographs as heretofore described by defense counsel."  In September 2000, Michael Slover, Jr., filed a motion to reconsider.

In September 2000, the trial court held a sentencing hearing, at which the trial court allowed Bellows to be substituted as the subject of its order.  Bellows waived service of summons.  Bellows respectfully declined to produce unpublished photographs and requested a sentence in the trial court's discretion to enable her to appeal the trial court's order.  The trial court sentenced Bellows to the Macon County jail pending compliance and stayed the sentence pending appeal.  The trial court allowed Michael Slover, Jr., to withdraw his motion to reconsider, and the trial court allowed Michael Slover, Sr., and Jeanette Slover to join in Michael Slover, Jr.'s motion to produce unpublished photographs.  Respondents appealed.

II. ANALYSIS

A. Reporter’s Privilege

In Illinois, reporters have a statutory, qualified privilege protecting their sources, whether confidential or nonconfidential, from compelled disclosure.  
People v. Palacio
, 240 Ill. App. 3d 1078, 1091, 607 N.E.2d 1375, 1383 (1993).  This statutory privilege, also known as the reporter's privilege, is found in section 8-901 of the Code
 (735 ILCS 5/8-901 (West 1998))
, which states, "[n]o court may compel any person to disclose the source of any information obtained by a reporter except as provided in *** this [Code].
"

The parties disagree whether the Herald's news photographers are "reporters" as defined in section 8-902(a) of the Code (735 ILCS 5/8-902(a) (West 1998))
 and whether
 the photographs they took are a "source" of information as defined in section 8-902(c) of the Code (735 ILCS 5/8-902(c) (West 1998)).  

Statutory construction is a matter of law and is considered 
de
 
novo
.  
McCann v. Presswood
, 308 Ill. App. 3d 1068, 1071, 721 N.E.2d 811, 813 (1999). 
 The principal rule of statutory construction is to ascertain and give effect to the legislature's intent.  To determine the legislature's intent, courts first look to the statute's language.  
McCann
, 308 Ill. App. 3d at 1071, 721 N.E.2d at 813
.  A
 court must give the legislative language its plain and ordinary meaning.  
People v. Bowden
, 313 Ill. App. 3d 666, 668, 730 N.E.2d 138, 140 (2000).

B. The Herald's Photographers as Reporters

The first issue is whether the Herald’s photographers are considered "reporters" under section 8-901.  Section 8-902(a) defines "reporter" as
 "any person regularly engaged in the business of 
collecting
, writing[,] or editing news for publication through a news medium."  (Emphasis added.)  735 ILCS 5/8-902(a) (West 1998).  Photojournalism in­cludes "photographic presentation of news stories."  Merriam-Webster's Collegiate Dictionary 875 (10th ed. 1998).  The Herald’s photographers unquestionably were engaged in the business of collecting news for publication in a news medium.  Therefore, the photographs defendants subpoenaed were "obtained by a reporter" within the plain meaning of section 8-901 and section 8-902(a).

C. Photographs as a Source of Information

The parties also disagree whether the trial court has compelled respondents to disclose the "source" of any information.
  
Defendants urge us to interpret section 8-901,
 in cases involving photographs, to protect only those photographs depicting the identity of news sources.
  We disagree.

Section 8-902(c) of the Code (735 ILCS 5/8-902(c) (West 1998)) defines "source" as "the person 
or
 
means
 from or through which the news or information was obtained" (emphasis added).
  A "means" is "something useful or helpful to a desired end."  Merriam-Webster's Collegiate Dictionary 720 (10th ed. 1998).  
News media employ photographers for purposes beyond obtaining pictures to publish; photography is a useful means to collect newsworthy information.  "Photojournalism" is not a word crafted to artificially enhance the status of a photographer.  It is a descriptive word meant to recognize the photographer's capacity to tell a story and gather or report the news by means of an image.  A photojournalist is a reporter.  When a reporter obtains news or information by means of photography, the photograph is a "source"
 of information within the plain meaning of section 8-901 as defined in section 8-902(c).

By defining "source" to include a "means," the legislature clearly intended the privilege to protect more than simply the names and identities of witnesses, informants, and
 other persons providing news to a reporter.  We note the legislature did not limit the scope of section 8-901 of the Code by inserting either "the name of" or "the identity of" before
 "the
 source of any information."
  

Defendants also contend the subpoenaed photographs should not be privileged because they preserved images all of which are part of the public domain.  We reject that argument because section 8-901 ­protects even nonconfidential source­s.
  
Palaci­o
, 240 Ill. App. 3d at 1092, 607 N.E.2d at 1383.

In this case, defendants desire certain information, namely, ­whether police dumped burn barrels during searches prior ­to March 10, 1998.  When defendants subpoenaed the Herald’s photographs and filed their motion for a rule to show cause, they sought to compel respondents to disclose a source of that information.  When the trial court found the statutory reporter’s privilege did not apply, it erred as a matter of law.
  Accordingly, we reverse the trial court’s order compelling respondents to produce unpublished photographs, and we reverse the contempt finding based upon Bellows' violation of that order.  We remand for the trial court to allow defendants to file an application to divest the privilege
, pursuant to section 8-903(a) of the Code (735 ILCS 5/8-903(a) (West 1998))
, if they so desire.

D. Cross-Appeal

Because we reverse the trial court’s order, we need not address defendants’ cross-appeal.

 
 
 
 III. CONCLUSION

For the reasons stated, we reverse the trial court's order requiring respondents to produce unpublished photographs for an 
in
 
camera
 examination, reverse the contempt finding
, and remand for the trial court to allow defendants to file an application to divest the privilege.

Reversed and remanded with directions.

MYERSCOUGH, J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

The majority's refusal to limit the reporter's privilege statute "to protect only those photographs depicting the identity of news sources" (slip op. at 6) is a fundamental departure from the language of the statute and the existing case law.  I respectfully dissent and would affirm the decision of the trial court.  

The reporter's privilege statute provides that "[n]o court may compel any person 
to
 
disclose
 
the
 
source
 
of
 any information obtained by a reporter" except after application to the court for an order divesting the privilege.  (Emphasis added.)  735 ILCS 5/8-901 (West 1998).  The court shall not order divestiture unless all other sources of information have been exhausted and disclosure of the information sought is essential to the protection of the public interest.  735 ILCS 5/8-907(2) (West 1998).

In 
Palacio
, we rejected the argument that mere assertion of the privilege made the procedural aspects of the reporter's privilege statute applicable.  "That statute does not *** constitute a wholesale ban on 
ever
 calling reporters to testify unless the trial court has complied with the divestment procedures ***."  (Emphasis in original.)  
Palacio
, 240 Ill. App. 3d at 1092, 607 N.E.2d at 1383.  In 
Palacio
, defendant was shot while committing home invasion and arson.  
Palacio
, 240 Ill. App. 3d at 1082, 607 N.E.2d at 1377.  During closing argument the prosecutor stated that "the truth of the matter is, he got shot one too few times."  (Emphasis omitted.)  
Palacio
, 240 Ill. App. 3d at 1087, 607 N.E.2d at 1380.  In a posttrial motion, defendant argued the comment was intentional, and defendant quoted a newspaper article where the prosecutor had stated, "I'm not too sure [it was] wrong."  
Palacio
, 240 Ill. App. 3d at 1098, 607 N.E.2d at 1387.  Defendant attempted to call the reporter to confirm the conversation and perhaps testify whether the prosecutor made other statements.  
Palacio
, 240 Ill. App. 3d at 1099, 607 N.E.2d at 1388.  We rejected the reporter's claim that the reporter's privilege statute applied.  The privilege "is not without its limits; it applies only to circumstances in which someone seeks to compel a reporter to disclose the 
source
 of any information obtained by the reporter."  (Emphasis in original.)  
Palacio
, 240 Ill. App. 3d at 1093-94, 607 N.E.2d at 1384.  We noted the appropriate concern was "about harassment of the press and efforts to disrupt a reporter's relationship with his news sources."  
Palacio
, 240 Ill. App. 3d at 1093, 607 N.E.2d at 1384.

Consider this hypothetical.  A reporter witnesses a murder on a public street, writes down the license number of the car in which the murderer fled, and writes an article about the event.  The prosecution attempts to call the reporter as a witness at a criminal trial, but the reporter refuses to testify, arguing that the prosecution must show that "all other available sources of information have been exhausted," and "disclosure of the information sought is essential to the protection of the public interest."  735 ILCS 5/8-907(2) (West 1998).  There is clearly no reporter's privilege.  
Palacio
, 240 Ill. App. 3d at 1092, 607 N.E.2d at 1383 (statute protects against disclosure of sources, not disclosure of information).  Short of government harassment, the media must bear the same burden of producing evidence of criminal wrongdoing as any other citizen.  
People v. Pawlaczyk
, 189 Ill. 2d 177, 198-99, 724 N.E.2d 901, 914 (2000), quoting 
United States v. Smith
, 135 F.3d 963, 971 (5
th Cir. 1998).  If a reporter refused to testify about a crime that he observed, we would force him to do so, even though he argued that he was being forced to disclose himself as the "source" of the information, and even though the notes he made of the event were a "means" of obtaining the information.  

The majority now abandons the holding in 
Palacio
 that the reporter's privilege is "limited," in favor of a broad holding that whenever a litigant seeks a photograph from a newspaper the litigant must first file an application for divestment of privilege.  In 
Palacio
, we "[d]eclined to read out of section 8-901 *** the phrase 'to disclose the 
source
 of any information.'  (Emphasis added.)  Ill. Rev. Stat. 1989, ch. 110, par. 8-901."  
Palacio
, 240 Ill. App. 3d at 1092, 607 N.E.2d at 1383.  The majority, however, does exactly that today:

"By defining 'source' to include a 

'means,' the legislature clearly intended 

the privilege to protect more than simply the 

names and identities of witnesses, informants, 

and other persons providing news to a report-

er.  We note the legislature did not limit 

the scope of section 8-901 of the Code by 

inserting either 'the name of' or 'the iden-

tity of' before 'the source of any informa-

tion.'"  Slip op. at 6.

The majority notes that "source" is defined by the statute to mean "'the person or means from or through which the news or information was obtained,'" and a photograph can be a "means."  (Emphasis omitted.)  Slip op. at 6, quoting 735 ILCS 5/8-902(c) (West 1998).  The majority would accordingly allow a reporter to assert the privilege where the source of his information was a library book, even though there was no concern about identifying that source or disruption of the reporter's relationship with that source.  

In some cases, disclosing the means by which information was obtained will "disclose the source of [the] information."  735 ILCS 5/8-901 (West 1998).  If a source has made a tape recording of a conversation between herself and a public figure, and turns the tape recording over to a reporter, disclosure of the means will also identify the source.  If a source has made a photograph of herself and another individual at a location where the individual was not expected to be, disclosure of the photograph will also disclose the source of the information.  In the present case, however, the source of the information was the crime scene.  Turning over the photographs might disclose information known to the reporter/photographer, but it does not "disclose the source of any information" (735
 ILCS 5/8-901 (West 1998)), nor does it "disrupt a reporter's relationship with his news sources" (
Palacio
, 240 Ill. App. 3d at 1093, 607 N.E.2d at 1374).  In the present case, the photographs taken by the reporter were no different than notes made by a reporter of events observed by him.  Absent disclosure of a source, the reporter's privilege statute did not apply, and there was no need to file an application for divestment.  

Reporters have some protections even when the reporter's privilege does not apply.  The special witness doctrine applies to reporters.  
Palacio
, 240 Ill. App. 3d at 1094-102, 607 N.E.2d at 1384-90.  The trial court considered the special witness doctrine in this case, conducted a hearing, and issued a thoughtful order, concluding that the photographs should be turned over.  At the present time, of course, there is no indication that the reporter/photographer will be called to testify.  The rights of respondents have been fully protected in this case.