# Illinois Official Reports

## Appellate Court

---

### *People v. McKee*, 2014 IL App (3d) 130696

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, v. BETHANY McKEE, Defendant-Appellee (Joseph Hosey, Contemnor-Appellant). |
| District & No. | Third District<br>Docket No. 3-13-0696 |
| Filed | December 15, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's contempt order and the associated fines arising from the contemnor's refusal to comply with the trial court's order divesting him of his reporter's privilege and requiring him to surrender the documents and materials he obtained that led to the articles he wrote in connection with a murder case based on the strangulation of two men, including any information tending to identify the source of the material or an affidavit revealing the source of the material, was reversed on the ground that the identity of the source of the material could not be said to be relevant to a fact of consequence in the murder case. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 13-CF-100; the Hon. Gerald R. Kinney, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Kenneth L. Schmetterer (argued) and Joseph A. Roselius, both of
DLA Piper LLP, of Chicago, for appellant.

Chuck Bretz and Neil G. Patel (argued), both of Chuck Bretz &
Associates, P.C., of Joliet, for appellee.

Natalie J. Spears and Kristen C. Rodriguez, both of Dentons US LLP,
of Chicago, and Bruce D. Brown, of Reporter's Committee for
Freedom of the Press, of Arlington, Virginia, for *amicus curiae*.

Panel

JUSTICE CARTER delivered the judgment of the court, with opinion.
Presiding Justice Lytton and Justice Schmidt concurred in the
judgment and opinion.

**OPINION**

¶ 1    The State charged four individuals, including the defendant, Bethany McKee, with six
counts of first degree murder in connection with the alleged strangling deaths of two males.
After the indictment was filed, a reporter, respondent Joseph Hosey, wrote several articles that
contained alleged details of the murders. During pretrial matters, counsel for McKee filed a
motion to divest Hosey of his reporter's privilege, which sought the materials Hosey used to
write the articles and the source of those materials. The circuit court granted the motion, and
after Hosey was found in direct criminal and civil contempt for refusing to comply with the
divestiture order, Hosey appealed. On appeal, Hosey argues that the court erred when it
granted the motion for divestiture. We reverse.

¶ 2                                        FACTS
¶ 3    On January 31, 2013, the State charged four individuals, including the defendant, Bethany
McKee, via indictment with six counts of first degree murder in connection with the alleged
strangling deaths of two males.
¶ 4    On March 1, 2013, counsel for McKee filed a motion for a gag order to seal the court
records on the case. In that motion, counsel for McKee stated that the news website, the Joliet
Patch, ran a series of articles online beginning on February 26, 2013, that contained alleged
details of the events surrounding the murders. The articles were written by respondent Joseph
Hosey. One of the articles from February 26, 2013, stated that the Patch had obtained the
police reports from the investigation. The circuit court entered an agreed order on March 1,
2013, that prohibited the parties from discussing the case with the media and that sealed the
court record.[1] Eventually, pursuant to court order, all of the individuals with the Will County

_____

[1]The gag order was extended beyond its original expiration date and was later modified on May 21,
2013, to contain specific prohibitions. Also on that date, the court unsealed the court record.

- 2 -

State's Attorney's office, the Will County public defender's office, the Joliet police department, and the law offices representing the accuseds submitted affidavits that they were not responsible for the "leak."

¶ 5   On July 3, 2013, counsel for McKee filed a motion to divest Hosey of his reporter's privilege. In addition to acknowledging that the Joliet Patch obtained police reports from the case, the motion also alleged that Hosey additionally obtained the toxicology reports from the autopsies of the victims. The motion further stated that the Joliet clerk's office: (1) did not receive a Freedom of Information Act (FOIA) (5 U.S.C. § 552 (2012)) request for the reports from Hosey; (2) denied all other FOIA requests for the reports; and (3) did not have copies of the reports. The motion also alleged that the divestiture was necessary because the "leak" compromised McKee's ability to receive a fair trial and violated her due process rights, and that the divestiture would stop the "leak."

¶ 6   The circuit court held a hearing on the motion to divest, during which arguments were presented, and on August 29, 2013, the circuit court issued a written decision granting the motion. In support of its ruling, the court found that "[i]t is *** clear that if the source of the information to the reporter is an attorney or a member of the staff of any of the attorneys involved in this matter, that the Supreme Court rules relative to discovery have clearly been violated"; that "[t]he timing of the release of this information to the news media also creates a concern as to whether or not the secrecy of the Grand Jury process was violated"; and that the filing of over 500 affidavits from individuals regarding whether they had any role in the "leak" was sufficient to establish that all other sources of the information had been exhausted. Further, the court found:

> "This Court cannot ignore the fact that there is the potential for financial gains that come from one reporter obtaining this information sooner than other reporters. The Court can envision instances where significant income can result from obtaining information and using that information to author articles, books, plays, screenplays, in order to profit from exclusively obtained information. This Court is aware of its duty and obligation to protect the First Amendment Rights of the reporters, but cannot envision where those rights are superior to the fair trial rights of individuals charged by the State with the most serious criminal offenses."

Also in support of its ruling, the court stated the following with regard to the relevancy of the divestiture to the case's pending issues:

> "The issue of relevancy is not essentially limited to relevancy for trial issues. As the Court has previously noted, the disclosure of this information is relative to a determination of whether or not the Rules regarding the secrecy of the Grand Jury proceedings and the Rules of the Illinois Supreme Court have been intentionally violated by individuals who are subject to such Rules. Although the Court has indicated that these inquiries may seem to be off topic when it comes to focusing [*sic*] four (4) Defendants charged with Murder, this Court in no way believes that this inquiry is off the topic of determining whether or not there have been violations of Illinois law or Supreme Court Rules. In the event that these charges lead to a conviction, identifying the source of this information will become an issue on appeal or in a post-conviction petition."

Accordingly, the court divested Hosey of his reporter's privilege and required him to surrender copies of the documents he received, including any information that tended to identify the

source of the material provided to him. Further, in the event that disclosure did not identify the source, the court ordered Hosey to provide an affidavit revealing the source of the material provided to him.

¶ 7    Hosey asked the court to find him in contempt so he could appeal. On September 20, 2013, the court found Hosey in direct criminal and civil contempt, which included a $1,000 fine and a $300-per-day fine for every day of noncompliance extending for 180 days, at the end of which Hosey would be subject to incarceration until he complied with the court's order. Hosey appealed.

¶ 8                                    ANALYSIS

¶ 9    On appeal, Hosey argues that the court erred when it granted the motion for divestiture. Hosey contends, *inter alia*, that the divestiture motion did not meet the threshold requirement of establishing relevancy to the underlying proceeding.[2]

¶ 10    Initially, we note that the parties dispute the applicable standard of review. Hosey contends that we should apply the *de novo* standard, while McKee argues that we should apply the manifest weight of the evidence standard. We believe the appropriate standard is in fact the *de novo* standard. We acknowledge that section 8-905 of the Code of Civil Procedure states that divestiture proceedings are civil proceedings (735 ILCS 5/8-905 (West 2012)), and that in such proceedings, the party seeking divestiture has the burden of proof by a preponderance of the evidence (*People v. Pawlaczyk*, 189 Ill. 2d 177, 188 (2000) (applying the manifest weight of the evidence standard); *In re Subpoena Duces Tecum to Arya*, 226 Ill. App. 3d 848, 854 (1992) (same)). However, the dispositive question on appeal concerns the scope of relevancy under section 8-906 of the Code of Civil Procedure–Hosey argues for a narrow definition of relevance, while the defendant argues for a broad definition of relevance. Accordingly, this appeal presents a question of law, which we review *de novo*. See *People v. Slover*, 323 Ill. App. 3d 620, 623 (2001) (addressing the scope of terms in section 8-902 and applying the *de novo* standard to that question of statutory construction); *cf. Pawlaczyk*, 189 Ill. 2d at 188, 192-95 (stating earlier in the opinion that the manifest weight of the evidence standard applied to the appeal, but later stating that in addressing the scope of relevancy under section 8-904 that the court was performing statutory construction).

¶ 11    In Illinois, reporters possess a qualified privilege regarding confidentiality of sources. *Pawlaczyk*, 189 Ill. 2d at 187; see 735 ILCS 5/8-901 to 8-909 (West 2012). "The purpose of the privilege is to assure reporters access to information, thereby encouraging a free press and a well-informed citizenry." *Pawlaczyk*, 189 Ill. 2d at 187. In cases other than libel and slander cases in which an individual claims the qualified privilege, the party seeking the information can apply to the circuit court for a divestiture of the qualified privilege. 735 ILCS 5/8-903 (West 2012).

¶ 12    In relevant part, the party seeking the divestiture must meet three threshold requirements in the application:

---

[2] We acknowledge that the Reporter's Committee for Freedom of the Press and 38 other organizations filed an *amicus curiae* brief with this court in support of Hosey. The State also filed a brief, and McKee filed a motion to strike the State's brief and dismiss the State as a party on appeal. We have considered that motion and hereby deny it.

"the name of the reporter and of the news medium with which he or she was connected at the time the information sought was obtained; the specific information sought and its relevancy to the proceedings; and \*\*\* a specific public interest which would be adversely affected if the factual information sought were not disclosed." 735 ILCS 5/8-904 (West 2012).

See also 735 ILCS 5/8-906 (West 2012) (requiring the circuit court to consider, *inter alia*, the relevancy of the source in making its divestiture determination).

¶ 13 With regard to the threshold requirement of relevancy, it is important to note the type of proceeding in which the information is being sought. In *Pawlaczyk*, the proceeding was a special grand jury proceeding related to perjury charges. *Pawlaczyk*, 189 Ill. 2d at 193. In addressing relevancy, the *Pawlaczyk* court noted that "a fact is 'relevant' if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[3] *Id.* After noting what facts were consequential to a perjury charge, the *Pawlaczyk* court concluded that "if the privileged information will make any one of the elements of perjury more or less probable, then it is relevant 'to the proceedings.' " *Id.* at 193-94.

¶ 14 In this case, the proceeding in which the information is being sought is a criminal prosecution for first degree murder. See 735 ILCS 5/8-903(a), 8-904 (West 2012); *Pawlaczyk*, 189 Ill. 2d at 193. Specifically, McKee has been charged with six counts of first degree murder–one count for each victim under each of the three subsections of the first degree murder statute. See 720 ILCS 5/9-1(a)(1)-(3) (West 2012). The circuit court noted in its decision that the information being sought was seemingly off topic with regard to the murder charges. However, the court stated that the information pertained to whether the "leak" violated the Illinois Supreme Court Rules or other Illinois law–in other words, to collateral matters. As a matter of statutory construction, relevance to such collateral matters is not sufficient to satisfy section 8-904's threshold requirement that the sought-after information be relevant to the proceedings in which it is being sought. See *Pawlaczyk*, 189 Ill. 2d at 193-94; accord *Brown v. Commonwealth*, 204 S.E.2d 429, 431 (Va. 1974) (holding that divestiture is warranted in a criminal case when the information sought is material to proof of an element of the offense charged, to proof of the defense asserted by the accused, to a reduction in the gradation of the charge, or to a mitigation of the penalty associated with the charge). Because the identity of Hosey's source cannot be said to be relevant to a fact of consequence to the first degree murder allegations, we hold that the circuit court erred when it granted the motion for divestiture. See *Pawlaczyk*, 189 Ill. 2d at 193-94.

¶ 15 Our ruling on the relevancy issue obviates the need to address Hosey's other arguments on appeal, including his argument related to the contempt order and its associated fines. Because we have reversed the circuit court's judgment, the court's contempt order and its associated fines are hereby vacated.

---

[3] In this regard, we also note that under Illinois Rule of Evidence 401 (eff. Jan. 1, 2011), " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

¶ 16                                    CONCLUSION

¶ 17        The judgment of the circuit court of Will County is reversed.

¶ 18        Reversed.